# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

**TERESA HARWOOD,**

      Plaintiff,

**v.**

**NORTH AMERICAN BANCARD LLC,**
and **MARC GARDNER**, jointly and severally,

      Defendants.

Case No. _____

Honorable _____

Magistrate Judge _____

_____ /

## COMPLAINT AND JURY DEMAND

Plaintiff, Teresa Harwood ("Plaintiff"), by her undersigned counsel, states the following for her Complaint and Jury Demand against Defendants North American Bancard ("NAB") and Marc Gardner ("Gardner")(together, "Defendants"):

### Parties, Jurisdiction and Venue

1.    Plaintiff is a female individual over the age of 18.  At all relevant times, Plaintiff resided in Rochester and Metamora, Michigan and worked in Troy, Michigan.

2.    NAB is a Delaware limited liability company with its principal place of business located in Troy, Michigan.

3.    Gardner is a male individual over the age of 18.  At all relevant times, Gardner resided and engaged in business in the Eastern District of Michigan.

4.      Gardner is the President and Chief Executive Officer ("CEO") of NAB, and, throughout Plaintiff's employment with NAB, Gardner was acting within the course and scope of his position as President and CEO, he had power and control over the terms and conditions of Plaintiff's employment, and he exercised ultimate authority over Plaintiff's employment and working conditions.

5.      This Court has jurisdiction pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e *et seq.;* 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1343 (jurisdiction over civil rights claims).  This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, as Plaintiff's state law claims pursuant to the Elliott-Larsen Civil Rights Act ("ELCRA"), MCLA 37.2101 *et seq.* arise out of the same operative facts as Plaintiff's other claims and, together, they form part of the same case and/or controversy.

6.      This Court has personal jurisdiction over the Defendants because each resides in or engages in continuous and systematic business within the State of Michigan and maintains a substantial physical presence in this State, including the operation of NAB's corporate headquarters in Troy, Oakland County, Michigan.

7.      Venue is proper pursuant to 28 U.S.C. § 1391 because the Defendants are located in, and the discriminatory employment practices and all other acts alleged in this Complaint occurred within the Eastern District of Michigan.

JAFFE RAITT HEUER & WEISS, P.C.

8.     The amount in controversy exceeds $75,000.00, exclusive of costs, interest and attorney fees.

9.     NAB is an employer and Plaintiff was its employee within the meaning of Title VII and the ELCRA.

10.     Gardner was the agent of NAB within the meaning of the ELCRA, was responsible for the discrimination, harassment and retaliation against Plaintiff and exercised ultimate authority over the terms and conditions of Plaintiff's employment.

11.     NAB as Plaintiff's employer, by and through its agents, servants and/or employees, engaged in discrimination, harassment and retaliation against Plaintiff in violation of Title VII and the ELCRA.   Gardner, individually, as NAB's agent, engaged in discrimination, harassment and retaliation against Plaintiff in violation of the ELCRA.   NAB and Gardner, together, are referred to as Defendants.

12.     On June 22, 2018, Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") asserting discrimination based on sex/gender, harassment and retaliation.

13.     On or about August 9, 2018, the EEOC mailed Plaintiff a Notice of Right to Sue letter (Exhibit 1).

14.     Plaintiff exhausted her administrative remedies and timely filed this Complaint.   This court has jurisdiction over this lawsuit.

3

4193318.v1

## Factual Allegations

15.    Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

16.    NAB is a company operating in the payment technology services industry offering its business merchants a variety of services, including, credit card processing, ecommerce/gateway, mobile payments, and cash advances.

17.    Plaintiff has over 25 years of experience in the payment technology services industry.  Prior to joining NAB, Plaintiff rose up the ranks of two publicly held payment services companies.  She received numerous awards and accolades. Plaintiff was well-known in the industry, particularly for her expertise in customer service, conversion, relationship management, and sales.

18.    In August 2012, while Plaintiff was employed as a Senior Vice President at Global Payments located in Owen Mills, Maryland she was contacted by NAB's Director of Human Resources and was asked to meet with Defendant Gardner to discuss the position of Chief Operating Officer at NAB.  Plaintiff did not apply for or seek out this meeting or position.

19.    On August 10, 2012, NAB offered Plaintiff the position of Chief Operating Officer ("COO") at NAB (Exhibit 2, Offer Letter).

20.    While Plaintiff was not given a job description, Schedule A of the Offer Letter states that NAB will evaluate Plaintiff's performance based on:  "improv[ing]

4

the customer experience by increasing customer satisfaction and reducing hold times; strengthening the portfolio by increasing merchant activations and optimizing corresponding basis point losses; driving cost savings and efficiencies across Executive's area of responsibility."

21.    Plaintiff accepted the position with NAB and moved her family from Maryland to Michigan.  Plaintiff started work at NAB on October 22, 2012.

22.    When Plaintiff started work at NAB, the following positions reported directly to her:  Vice President of Operations (Risk, Collections, Underwriting and Account Maintenance), Director of Customer Service, Manager of Deployment and Manager of Merchant Compliance.

23.    After the departure of the then Chief Financial Officer, in early 2013, Plaintiff assumed additional responsibilities including Sales, Specialty Markets, Learning and Development, Capital for Merchants and Humboldt.

24.    NAB modified Plaintiff's base salary and bonus structure as the result of these changes as outlined in the letter dated October 15, 2013 (Exhibit 3, EBITDA Bonus Letter).

25.    In 2015, Plaintiff's duties were modified again after NAB acquired Electronic Payment Exchange (EPX).  Based on Plaintiff's many years of experience, NAB asked her to assume responsibility for the non-technology parts of

4193318.v1

EPX. Then Chief Information Officer ("CIO") assumed the responsibility for the technology team at EPX.

26.     At this time, NAB also moved Capital for Merchants under Kirk Haggerty, Chief Financial Officer ("CFO"); and Learning and Development was moved under Human Resources.

27.     Later in 2015, the then current CIO, who was male, was struggling to perform his EPX duties. He was not fired. Rather, NAB asked Plaintiff to take over his responsibilities for the technology team of EXP, which she did without additional compensation.

28.     Throughout Plaintiff's tenure with NAB, she received numerous accolades based upon the performance of the departments and projects for which she was responsible. She never received a negative performance evaluation.

29.     Her performance and the financial success of the departments she managed was comparable to or exceeded her male counterparts' performance and/or exceeded NAB's expectations.

30.     Throughout her employment, Plaintiff witnessed inappropriate behavior by Gardner and discussed her concerns with him regarding professionalism, communications, anti-harassment, management and employee engagement.

6

31.   Plaintiff also discussed and complained about these areas of concern related to Gardner's inappropriate behavior with Gardner, other officers, executive team members, NAB counsel and human resources.  These individuals were aware of but failed or refused to take action to stop Gardner's behavior.

32.   Plaintiff also discussed with Gardner her concerns related to his practices of mistreating and/or sexualizing women.

33.   By way of example, contrary to Plaintiff's recommendation, Gardner hired female models for an industry event.  These models were so scantily clad that an NAB vendor, in attendance at the event, had to leave the event because the model's attire violated its corporate code of conduct.

34.   Plaintiff discussed with Kirk Haggerty and Tracy Metzger and complained about the inappropriateness of these models and their attire, who agreed with Plaintiff's assessment but, to Plaintiff's knowledge, did nothing to stop Gardner's behavior.

35.   After the industry event, Gardner refused to pay for the models' services stating that they did not look like the models he had picked out from the catalogue.

36.   Gardner was also photographed at a NAB holiday party engaging in inappropriate sexual behavior with two women in a photo booth.  NAB's general

7

counsel and outside counsel were made aware of the incident and the photos but did nothing to stop the highly offensive behavior.

37.     The photos were posted to the company intranet following the event. Numerous employees saw the photos and complained before they were removed from the company intranet.

38.     Upon information and belief, after the holiday party, Gardner took a group of employees to strip clubs.

39.     Gardner also had a practice of mistreating women by excluding them from events or meetings and/or failing or refusing to seek their input on matters related to their job or responsibilities.

40.     Gardner directed this disparate treatment and exclusionary tactics toward Plaintiff as well.   Gardner would often have dinner and/or drinks with Plaintiff's male counterparts but exclude Plaintiff from these meetings.   When Plaintiff later learned about these dinner/drink meetings, she complained to Gardner about being excluded and the disparity in treatment as compared to her male colleagues.  She complained to Gardner that his exclusionary behavior impaired her ability to perform her job in an effective manner and was degrading to her as a woman, a professional and as a member of the C-suite team.

8

41.     Gardner and the other male members of the C-suite team also excluded Plaintiff from meetings and communications involving business decisions that involved her direct reports, subordinate employees and/or her departments.

42.     They made decisions about her department without her and often informed her of the decision shortly before implementation, which had a direct negative impact on her department or team, employee morale, productivity and/or performance.

43.     Gardner had one-on-one meetings with the male officers and male executive team but few, if any, with Plaintiff.  Plaintiff implored Gardner not to exclude her from these one-on-one meetings.  Gardner agreed to include Plaintiff on his schedule but then cancelled the one-on-one meetings without explanation.

44.     Gardner and the other male officers excluded Plaintiff from acquisition meetings and other meetings that involved projects that her department was handling as part of the due diligence related to that acquisition.

45.     Plaintiff complained to Gardner that her exclusion from these meetings and communications was hindering her ability to do her job and that she was being treated differently than her male counterparts.

46.     The more Plaintiff complained, the worse Gardner's treatment became.

JAFFE RAITT HEUER & WEISS, P.C.

4193318.v1

47.     The other male officers, male executives, NAB counsel and Human Resources were aware of Gardner's behavior toward Plaintiff and other women but failed or refused to stop or correct his behavior.

48.     In August 2017, Plaintiff was selected by DBusiness Magazine as one of eight power female professionals who were driving growth in Michigan, the nation and the world.  NAB failed to acknowledge this achievement.

49.     For the article, Plaintiff was questioned about gender equality, and she was publicly quoted as saying "rather than consult me for items that are in my span of control, my peer group (all male) is consulted instead."

50.     Gardner was furious with her public comment.  One of Plaintiff's male peers confronted her and told her she had no right to make that statement.

51.     The discriminatory, harassing and retaliatory behavior by Gardner and other male officers of NAB worsened after publication of the DBusiness article.

52.     Gardner continued to exclude Plaintiff from meetings, communications and decisions involving her department and her team.

53.     Team members were taken from Plaintiff's team without informing Plaintiff.  Gardner removed an entire department from Plaintiff's control without first discussing the matter with Plaintiff.

4193318.v1

54.    Plaintiff continued to plead with Gardner and the other male officers to include her in meetings, communications and decisions.  She explained the damage these exclusions were causing her, her team and NAB.

55.    Gardner also treated Plaintiff differently than her male counterparts by ignoring or delaying his response to communications from Plaintiff even when Plaintiff expressed urgency on the matter.

56.    Gardner made the decision to terminate Plaintiff's employment.  NAB terminated Plaintiff on February 20, 2018.

57.    After her termination, Plaintiff was informed that she was terminated for performance issues.  However, during her employment, she was never informed of any performance issues.  NAB did not warn Plaintiff that her behavior, conduct or performance could result in disciplinary action. She never received a negative performance review.

58.    Several of Plaintiff's male counterparts at the officer and executive levels committed errors or failed to perform their duties resulting in losses or damage to NAB ranging from several hundred thousand to several million dollars in damages.  These male employees were not disciplined or terminated and continue to work for NAB.

59.    Several of Plaintiff's male counterparts at the officer and executive levels engaged in behavior similar to or the same as the alleged behavior for which

11

NAB purportedly terminated Plaintiff's employment. These male employees were not disciplined or terminated and continue to work for NAB.

60.     Plaintiff's male counterparts at the officer and executive levels were treated more favorably than Plaintiff and were not disciplined or terminated despite having engaged in the same or similar behavior for which NAB allegedly terminated Plaintiff.

61.     After her termination, Plaintiff's duties and responsibilities were given to her male counterparts.

## COUNT I
## GENDER DISCRIMINATION IN VIOLATION OF TITLE VII

62.     Plaintiff realleges and incorporates the above paragraphs by reference as if fully set forth herein.

63.     NAB is an employer and Plaintiff was its employee within the meaning of Title VII.

64.     Title VII prohibits employers from adversely affecting the terms and conditions of Plaintiff's employment because of her sex or gender.  Plaintiff is a woman, and, throughout her employment with NAB, she was qualified for her position as NAB's COO.

65.     NAB treated Plaintiff differently in the terms and conditions of her employment compared to her similarly situation male counterparts because of her sex or gender in violation of Title VII, 42 U.S.C. §2000e *et seq.*

4193318.v1

66. NAB terminated Plaintiff because of her sex or gender in violation of Title VII, 42 U.S.C. §2000e *et seq.*

67. The acts of discrimination against Plaintiff constitute a pattern and practice of discrimination against its employees on the basis of sex or gender. NAB's discrimination against Plaintiff constitutes a continuing violation, and the discrimination is part of an ongoing pattern.

68. As a direct and proximate result of NAB's willful conduct in knowingly and intentionally discriminating against Plaintiff, she has suffered and will continue to suffer loss of pay and benefits, bonus compensation, employment opportunities, together with pain, humiliation and emotional distress.

69. NAB's conduct as described above was willful, wanton, malicious, and done in reckless disregard of Plaintiff's rights. Plaintiff is thereby entitled to general, compensatory and punitive damages in amounts to be proven at trial.

70. As a further direct and proximate result of NAB's violation of Title VII, as described, Plaintiff has been compelled to retain the services of counsel and has thereby incurred and will continue to incur legal fees and costs, the full nature and extent of which are presently unknown to Plaintiff.

WHEREFORE, Plaintiff prays that this Honorable Court grant the following remedies:

A. declare that the aforementioned practices and actions of NAB constitute unlawful employment practices in willful violation of Title VII;

13

4193318.v1

B. award Plaintiff all lost wages, past and future, to which she is entitled;

C. award Plaintiff all fringe benefits to which she is entitled;

D. award Plaintiff all bonus compensation or other contractual bonus and other payment to which she is entitled;

E. award Plaintiff damages for emotional distress;

F. award Plaintiff compensatory damages;

G. award Plaintiff all punitive damages to which she is entitled;

H. award Plaintiff reasonable attorney fees, costs and interest; and

I. award such other relief as this Court deems just and proper.

## COUNT II
## HARASSMENT / HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII

71.     Plaintiff incorporates by reference the allegations contained in the paragraphs above, as if fully set forth herein.

72.     Plaintiff is a woman, and, throughout her employment with NAB, she was qualified for her position as NAB's COO.

73.     NAB is an employer and Plaintiff was its employee within the meaning of Title VII.

74.     While employed by NAB, Plaintiff was subjected to numerous forms of sexual harassment or harassment based on her gender by NAB, which acts were a violation of Title VII.

75.     Plaintiff was subjected to sexual harassment or harassment based on her gender, which was sufficiently severe or pervasive to create a hostile work environment.

14

4193318.v1

76.    NAB's sexual harassment or harassment based on Plaintiff's gender negatively impacted the terms and conditions of Plaintiff's employment and interfered with Plaintiff's ability to perform her job.

77.    NAB's sexual harassment or harassment based on Plaintiff's gender was intimidating, hostile, offensive and abusive.

78.    Plaintiff's male counterparts were not subject to the same harassing behavior.

79.    NAB's sexual harassment or harassment based on Plaintiff's gender was unwanted, and Plaintiff complained about the harassing behavior to Gardner, other officers of NAB, NAB's counsel and human resources who failed or refused to prevent or take action to stop the harassing behavior.

80.    As a direct and proximate result of NAB's willful conduct in knowingly and intentionally harassing Plaintiff and creating a hostile working environment, she has suffered and will continue to suffer loss of pay and benefits, bonus compensation, employment opportunities, together with pain, humiliation and emotional distress.

81.    NAB's conduct as described above was willful, wanton, malicious, and done in reckless disregard of Plaintiff's rights.  Plaintiff is thereby entitled to general, compensatory and punitive damages in amounts to be proven at trial.

4193318.v1

82. As a further direct and proximate result of NAB's violation of Title VII, as described, Plaintiff has been compelled to retain the services of counsel and has thereby incurred and will continue to incur legal fees and costs, the full nature and extent of which are presently unknown to Plaintiff.

WHEREFORE, Plaintiff prays that this Honorable Court grant the following remedies:

A. declare that the aforementioned practices and actions of NAB constitute unlawful employment practices in willful violation of Title VII;
B. award Plaintiff all lost wages, past and future, to which she is entitled;
C. award Plaintiff all fringe benefits to which she is entitled;
D. award Plaintiff all bonus compensation or other contractual bonus and other payments to which she is entitled;
E. award Plaintiff damages for emotional distress;
C. award Plaintiff compensatory damages;
D. award Plaintiff all punitive damages to which she is entitled;
E. award Plaintiff reasonable attorney fees, costs and interest; and
F. award such other relief as this Court deems just and proper.

## COUNT III
## RETALIATION IN VIOLATION OF TITLE VII

83. Plaintiff incorporates by reference all allegations contained in the above paragraphs as is fully set forth herein.

84. NAB is an employer and Plaintiff was its employee within the meaning of Title VII.

85. NAB actions constitute violations of Title VII which prohibits employers from retaliating against employees for opposing any practice made

16

unlawful by Title VII or making a charge, testifying, assisting or participating in any investigation, proceeding or hearing under Title VII.

86.    Plaintiff engaged in conduct protected under Title VII, *i.e.*, opposing and complaining of the harassing and discriminatory conduct of NAB's agents and/or employees which acts constituted a violation of Title VII.

87.    After opposing or making complaints of sexual harassment or harassment based on Plaintiff's gender and discrimination to numerous individual at NAB, including the perpetrator and decision-maker, Plaintiff was subject to retaliation and further harassment by NAB and its agents and/or employees as set forth above.

88.    As a direct and proximate result of Plaintiff's protected activity, Plaintiff suffered retaliation which negatively impacted the terms and conditions of Plaintiff's employment, including termination of her employment.

89.    As a direct and proximate result of NAB's willful conduct in knowingly and intentionally retaliating against Plaintiff, she has suffered and will continue to suffer loss of pay and benefits, bonus compensation, employment opportunities, together with pain, humiliation and emotional distress.

90.    NAB's conduct as described above was willful, wanton, malicious, and done in reckless disregard of Plaintiff's rights.  Plaintiff is thereby entitled to general, compensatory and punitive damages in amounts to be proven at trial.

4193318.v1

91.     As a further direct and proximate result of NAB's violation of Title VII, as described, Plaintiff has been compelled to retain the services of counsel and has thereby incurred and will continue to incur legal fees and costs, the full nature and extent of which are presently unknown to Plaintiff.

WHEREFORE, Plaintiff prays that this Honorable Court grant the following remedies:

A.     declare that the aforementioned practices and actions of NAB constitute unlawful employment practices in willful violation of Title VII;

B.     award Plaintiff all lost wages, past and future, to which she is entitled;

C.     award Plaintiff all fringe benefits to which she is entitled;

D.     award Plaintiff all bonus compensation or other contractual bonus and other payments to which she is entitled;

E.     award Plaintiff damages for emotional distress;

F.     award Plaintiff compensatory damages;

G.     award Plaintiff all punitive damages to which she is entitled;

H.     award Plaintiff reasonable attorney fees, costs and interest; and

I.     award such other relief as this Court deems just and proper.

## COUNT IV
## DISCRIMINATION IN VIOLATION OF THE ELCRA

92.     Plaintiff realleges and incorporates the above paragraphs by reference as if fully set forth herein.

93.     The ELCRA prohibits employers from adversely affecting the terms and conditions of Plaintiff's employment because of her sex or gender.  Plaintiff is a woman, and, throughout her employment with NAB, she was qualified for her position as NAB's COO.

JAFFE RAITT HEUER & WEISS, P.C.

18

94. NAB was Plaintiff's employer, and Gardner was an agent of NAB, having supervisory authority and control over the terms and conditions of Plaintiff's employment. The ELCRA imposes individual liability against agents of the employer who violate the ELCRA.

95. NAB and Gardner treated Plaintiff differently in the terms and conditions of her employment compared to her similarly situation male counterparts because of her sex or gender in violation of the ELCRA, MCLA 37.2101, *et seq.*

96. NAB and Gardner terminated Plaintiff because of her sex or gender in violation of the ELCRA, MCLA 37.2101, *et seq.*

97. Defendants' acts of discrimination against Plaintiff constitute a pattern and practice of discrimination against Defendants' employees on the basis of sex or gender. Defendants' acts of discrimination against Plaintiff constitutes a continuing violation, and the discrimination is part of an ongoing pattern.

98. As a direct and proximate result of Defendants' willful conduct in knowingly and intentionally discriminating against Plaintiff, she has suffered and will continue to suffer loss of pay and benefits, bonus compensation, employment opportunities, together with pain, humiliation and emotional distress.

99. The conduct as described above was willful, wanton, malicious, and done in reckless disregard of Plaintiff's rights. Plaintiff is thereby entitled to general and compensatory in amounts to be proven at trial.

JAFFE RAITT HEUER & WEISS, P.C.

100.    As a further direct and proximate result of Defendants' violation of the ELCRA, as described, Plaintiff has been compelled to retain the services of counsel and has thereby incurred and will continue to incur legal fees and costs, the full nature and extent of which are presently unknown to Plaintiff.

WHEREFORE, Plaintiff prays that this Honorable Court grant the following remedies:

A. declare that the aforementioned practices and actions of Defendants constitute unlawful employment practices in willful violation of the ELCRA;
B. award Plaintiff all lost wages, past and future, to which she is entitled;
C. award Plaintiff all fringe benefits to which she is entitled;
D. award Plaintiff all bonus compensation or other contractual bonus and other payment to which she is entitled;
E. award Plaintiff damages for emotional distress;
F. award Plaintiff compensatory damages;
G. award Plaintiff reasonable attorney fees, costs and interest; and
H. award such other relief as this Court deems just and proper.

## COUNT V
## HARASSMENT / HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF THE ELCRA

101.    Plaintiff incorporates by reference the allegations contained in the paragraphs above, as if fully set forth herein.

102.    Plaintiff is a woman, and, throughout her employment with NAB, she was qualified for her position as NAB's COO.

103.    NAB was Plaintiff's employer, and Gardner was an agent of NAB, having supervisory authority and control over the terms and conditions of Plaintiff's

20

4193318.v1

employment.   The ELCRA imposes individual liability against agents of the employer who violate the ELCRA.

104.   While employed by NAB, Plaintiff was subjected to numerous forms of sexual harassment or harassment based on her gender by NAB, through its agents and/or employees, which acts were a violation of the ELCRA.

105.   NAB and Gardner subjected Plaintiff to sexual harassment or harassment based on her gender, which was sufficiently severe or pervasive to create a hostile work environment

106.   Defendants' sexual harassment or harassment based on Plaintiff's gender negatively impacted the terms and conditions of Plaintiff's employment and interfered with Plaintiff's ability to perform her job.

107.   Defendants' sexual harassment or harassment based on Plaintiff's gender was intimidating, hostile, offensive and abusive.

108.   Plaintiff's male counterparts were not subject to the same harassing behavior.

109.   Defendants' sexual harassment or harassment based on Plaintiff's gender was unwanted, and Plaintiff complained about the harassing behavior to Gardner, other officers of NAB, NAB's counsel and human resources who failed or refused to prevent or take action to stop the harassing behavior.

4193318.v1

110.   As a direct and proximate result of Defendants' willful conduct in knowingly and intentionally harassing Plaintiff and creating a hostile working environment, she has suffered and will continue to suffer loss of pay and benefits, bonus compensation, employment opportunities, together with pain, humiliation and emotional distress.

111.   Defendants' conduct as described above was willful, wanton, malicious, and done in reckless disregard of Plaintiff's rights.  Plaintiff is thereby entitled to general and compensatory in amounts to be proven at trial.

112.   As a further direct and proximate result of Defendants' violation of the ELCRA, as described, Plaintiff has been compelled to retain the services of counsel and has thereby incurred and will continue to incur legal fees and costs, the full nature and extent of which are presently unknown to Plaintiff.

WHEREFORE, Plaintiff prays that this Honorable Court grant the following remedies:

A. declare that the aforementioned practices and actions of Defendants constitute unlawful employment practices in willful violation of the ELCRA;
B. award Plaintiff all lost wages, past and future, to which she is entitled;
C. award Plaintiff all fringe benefits to which she is entitled;
D. award Plaintiff all bonus compensation or other contractual bonus and other payment to which she is entitled;
E. award Plaintiff damages for emotional distress;
F. award Plaintiff compensatory damages;
G. award Plaintiff reasonable attorney fees, costs and interest; and
H. award such other relief as this Court deems just and proper.

4193318.v1

## COUNT VI
## RETALIATION IN VIOLATION OF THE ELCRA

113. Plaintiff incorporates by reference all allegations contained in the above paragraphs as is fully set forth herein.

114. Plaintiff is a woman, and, throughout her employment with NAB, she was qualified for her position as NAB's COO.

115. NAB was Plaintiff's employer, and Gardner was an agent of NAB, having supervisory authority and control over the terms and conditions of Plaintiff's employment. The ELCRA imposes individual liability against agents of the employer who violate the ELCRA.

116. Defendants' actions constitute violations of the ELCRA which prohibits employers from retaliating against employees for opposing any practice made unlawful by the ELCRA or making a charge, testifying, assisting or participating in any investigation, proceeding or hearing under the ELCRA.

117. Plaintiff engaged in conduct protected under the ELCRA, *i.e.,* opposing and complaining of the harassing and discriminatory conduct of NAB's agents and/or employees which acts constituted a violation of the ELCRA.

118. After opposing or making complaints of sexual harassment or harassment based on Plaintiff's gender and discrimination to numerous individual at NAB, including the perpetrator and decision-maker, Plaintiff was subject to

JAFFE RAITT HEUER & WEISS, P.C.

23

retaliation and further harassment by NAB and its agents and/or employees as set forth above.

119.   As a direct and proximate result of Plaintiff's protected activity, Plaintiff suffered retaliation which negatively impacted the terms and conditions of Plaintiff's employment, including termination of her employment.

120.   As a direct and proximate result of Defendants' willful conduct in knowingly and intentionally retaliating against Plaintiff, she has suffered and will continue to suffer loss of pay and benefits, bonus compensation, employment opportunities, together with pain, humiliation and emotional distress.

121.   Defendants' conduct as described above was willful, wanton, malicious, and done in reckless disregard of Plaintiff's rights.  Plaintiff is thereby entitled to general and compensatory in amounts to be proven at trial.

122.   As a further direct and proximate result of Defendants' violation of the ELCRA, as described, Plaintiff has been compelled to retain the services of counsel and has thereby incurred and will continue to incur legal fees and costs, the full nature and extent of which are presently unknown to Plaintiff.

WHEREFORE, Plaintiff prays that this Honorable Court grant the following remedies:

A. declare that the aforementioned practices and actions of Defendants constitute unlawful employment practices in willful violation of the ELCRA;
B. award Plaintiff all lost wages, past and future, to which she is entitled;

24

C. award Plaintiff all fringe benefits to which she is entitled;

D. award Plaintiff all bonus compensation or other contractual bonus and other payment to which she is entitled;

E. award Plaintiff damages for emotional distress;

F. award Plaintiff compensatory damages;

G. award Plaintiff reasonable attorney fees, costs and interest; and

H. award such other relief as this Court deems just and proper.

Respectfully submitted,

JAFFE, RAITT, HEUER & WEISS, P.C.

Dated: August 17, 2018

/s/ Nicole R. Foley
Nicole R. Foley (P63061)
Attorneys for Plaintiff
27777 Franklin Road, Ste. 2500
Southfield, MI 48034
(248) 351-3000
nfoley@jaffelaw.com

JAFFE RAITT HEUER & WEISS, P.C.

4193318.v1

## JURY DEMAND

NOW COMES Plaintiff, Teresa Harwood, by and through her attorneys, Jaffe, Raitt, Heuer & Weiss, P.C. and respectfully demands a trial by jury in the above-captioned matter.

Respectfully submitted,

JAFFE, RAITT, HEUER & WEISS, P.C.

Dated: August 17, 2018

/s/ Nicole R. Foley
Nicole R. Foley (P63061)
Attorneys for Plaintiff
27777 Franklin Road, Ste. 2500
Southfield, MI 48034
(248) 351-3000
nfoley@jaffelaw.com

JAFFE RAITT HEUER & WEISS, P.C.

4193318.v1