UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERESA HARWOOD,

               Plaintiff,

v.

NORTH AMERICAN BANCARD LLC,
and MARC GARDNER,

               Defendants.

_____/

Case No. 18-cv-12567

Paul D. Borman
United States District Judge

Elizabeth A. Stafford
United States Magistrate Judge

## OPINION & ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION (ECF NO. 42)

### I.  INTRODUCTION

On April 29, 2020 the Court issued an Opinion and Order granting, in part, and denying, in part, Defendants North American Bancard LLC (NAB) and Marc Gardner's Motion for Summary Judgment (ECF No. 26). (ECF No. 40.) In the Opinion and Order, the Court granted summary judgment to Defendants on Plaintiff Teresa Harwood's gender discrimination claims, her Title VII claims against Gardner, and her Elliot-Larsen Civil Rights Act (ELCRA) hostile environment claim. (*Id.*) The Court denied summary judgment on Harwood's Title VII hostile environment claim against NAB and her retaliation claims under both ELCRA and Title VII. (*Id.*)

On May 13, 2020, Defendants filed a Motion for Reconsideration of the Court's denial of summary judgment on Harwood's retaliation claims. (ECF No.

42.) Defendants argue that the Court committed a palpable error by "collapsing the *prima facie* and pretext inquiries into a single analysis" and by citing "irrelevant evidence" in that analysis. (*Id.*) After reviewing these arguments, the Court finds that neither argument clears the high bar for granting reconsideration, and therefore denies the Motion for Reconsideration.

## II. STANDARD OF REVIEW

"A motion for reconsideration [or rehearing] is governed by the local rules in the Eastern District of Michigan, which provide that the movant must show both that there is a palpable defect in the opinion and that correcting the defect will result in a different disposition of the case." *Indah v. U.S. S.E.C.*, 661 F.3d 914, 924 (6th Cir. 2011). Eastern District of Michigan Local Rule 7.1(h)(3) provides:

> Generally, and without restricting the court's discretion, the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case.

E.D. Mich. L.R. 7.1(h)(3). "A 'palpable defect' is a defect which is obvious, clear, unmistakable, manifest, or plain." *Michigan Dep't of Envtl. Quality v. City of Flint*, 296 F. Supp. 3d 842, 847 (E.D. Mich. 2017).

"A motion for reconsideration [or rehearing] should not be used liberally to get a second bite at the apple, but should be used sparingly to correct *actual* defects in the court's opinion." *Oswald v. BAE Industries, Inc.*, No. 10-cv-12660, 2010 WL 5464271, at *1 (E.D. Mich. Dec. 30, 2010). It should not be "used as a vehicle to re-hash old arguments or to advance positions that could have been argued earlier but were not." *Smith v. Mount Pleasant Public Schools*, 298 F. Supp. 2d 636, 637 (E.D. Mich. 2003). It follows, then, that "parties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued," *Roger Miller Music, Inc. v. Sony/ATV Publ'g,* 477 F.3d 383, 395 (6th Cir. 2007), and parties "may not introduce evidence for the first time in a motion for reconsideration where that evidence could have been presented earlier." *Bank of Ann Arbor v. Everest Nat. Ins. Co*., 563 F. App'x 473, 476 (6th Cir. 2014).

### III.    ANALYSIS

Defendants argue that the Court committed two palpable errors in its retaliation analysis. (ECF No. 42.) First, Defendants take issue with the following statement: "Other relevant evidence of causation necessarily blends into evidence that disproves the employer's non-retaliatory reason for the adverse action" (ECF No. 40, O&O, PgID 1830) and the fact that the Court collapsed the prima facie and

3

pretext inquiries into a single analysis. (ECF No. 42.) This was inappropriate, according to the Defendants, because the inquiries are different and there is a higher burden of proof at the pretext stage than at the prima facie stage. (*Id.* at PgID 1842, 1845–46.) Second, Defendants argue that the evidence cited by the Court is irrelevant and therefore does not create a genuine issue of material fact on the question of causation at either step of the inquiry. (*Id.* at PgID 1842–44, 1846–48.) Neither argument is persuasive.

### A.  Collapsing the Inquiry

To state a claim for retaliation under both Title VII and ELCRA using circumstantial evidence, a plaintiff must make out a prima facie case of four elements: (1) engagement in a protected activity; (2) defendant's knowledge of that engagement; (3) a materially adverse employment action; and (4) a causal connection between the protected activity and the adverse action. *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 613 (6th Cir. 2019). If the plaintiff establishes the prima facie case, the defendant must articulate a legitimate, non-retaliatory reason for the adverse action, and then the plaintiff must show that the defendant's reason was pretextual. *Id.* at 613–14. Ultimately, the plaintiff must show, at both the prima facie and pretext steps, that but for her protected activity she would not

4

have suffered the materially adverse action. *See Equal Emp't Opportunity Comm'n v. Ford Motor Co.*, 782 F.3d 753, 770 (6th Cir. 2015) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2003) for but-for cause requirement). At issue is the Court's finding of a genuine issue of material fact on the causation element of the prima facie case, and its finding of a genuine issue of material fact that Defendants' reason for terminating Harwood was pretext for retaliation.

As stated in the Opinion and Order, at the prima facie stage the plaintiff's burden to produce evidence of a causal connection is minimal. (ECF No. 40, O&O, PgID 1829 (citing *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th. Cir. 2007).) This burden can be satisfied by showing close temporal proximity between the protected activity and the materially adverse action, but when more than two or three months pass between the protected activity and materially adverse action, more evidence of causation is needed. *Redlin*, 921 F.3d at 615; *see also Adamov v. U.S. Bank Nat'l Ass'n*, 681 F. App'x 473, 477 (6th Cir. 2017) ("[W]here some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.").

5

Other evidence of causation takes several forms. One form is evidence that the plaintiff was subject to heightened scrutiny after the defendant learned of the protected conduct. *See, e.g.*, *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 435 (6th Cir. 2009) ("Hamilton alleges that his bosses heightened their scrutiny of him after he filed his EEOC complaint.") Another form is identified in the Court's Opinion and Order—evidence that casts doubt on the defendant's stated reason for the adverse action and so supports an inference that the real reason was retaliation. (*See* ECF No. 40, O&O, PgID 1830 (citing *Redlin*, 921 F.3d 615–16).) Finally, the absence of a clear intervening cause also solidifies the causal inference. *Cf. Kenney v. Aspen Tech., Inc.*, – F.3d – , 2020 WL 3638388, at *4 (6th Cir. 2020) ("We have . . . held that an intervening cause between protected activity and an adverse employment action dispels any inference of causation.")

Regardless of its form, however, evidence of causation beyond mere temporal proximity is evidence that courts can and do rely on in both the prima facie and pretext inquiries. In *Hamilton*, the Sixth Circuit relied on the evidence showing that Hamilton's employer "increased its surveillance of his work after he filed an age-discrimination complaint with the EEOC and then [the employer] waited for an opportunity to fire him," to find that Hamilton had established his

6

prima facie case and to find that the defendant's reason for terminating him was pretextual. 556 F.3d at 435–36. In *Redlin*, the Sixth Circuit provided the following pretext analysis:

> Defendant's stated reasons for the adverse employment actions against Plaintiff are discussed in full in the previous section [regarding the prima facie case], as are the reasons why a genuine issue of material fact exists as to the pretextual nature of Defendant's explanations. In brief, because Defendant's stated reasons do not appear to justify the discipline taken against Plaintiff and because Plaintiff has produced sufficient evidence from which a jury could reasonably reject Defendant's explanation, Plaintiff has created a genuine issue of material fact as to whether Defendant's reasons were pretextual.

921 F.3d at 616 (internal quotations and citations omitted).

This reliance on the same evidence for both inquiries makes sense, because a plaintiff can show that a defendant's reason is pretextual "by establishing that the proffered reason: 1) has no basis in fact; 2) did not actually motivate the adverse action; or 3) was insufficient to motivate the adverse action." *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003). Accordingly, evidence that affirmatively supports the plaintiff's story—that she was terminated because of her protected activity—necessarily shows that the stated reason for the termination was not the actual motivation. So, even though the inquiries are different at the prima

7

facie stage (whether there is any evidence supporting but-for causation) and the pretext stage (whether the proffered non-retaliatory reason eliminates any inference of but-for causation), both inquiries are directed toward the ultimate question of whether there is sufficient evidence for a jury to conclude that the plaintiff would not have suffered a materially adverse employment action if she had not engaged in protected activity.

Therefore, when the Court noted that "[o]ther relevant evidence of causation necessarily blends into evidence that disproves the employer's non-retaliatory reason for the adverse action," it did not commit a palpable error. (ECF No. 40, O&O, PgID 1830.) It simply acknowledged that the same evidence, beyond the temporal proximity between Harwood's protected activity and her termination, would be relevant to both inquiries. The Court's failure to formally separate the two analyses did make the analysis of each inquiry more opaque, but it did not render its eventual legal conclusion incorrect, as explained in the following section.

### B. The Relevance of the Evidence Cited by the Court

Defendants' second argument is that the Court cited evidence that "does not support a causation finding" and "does not support a finding of pretext." (ECF No. 42, Motion for Reconsideration, PgID 1842, 1846.) This argument fails because it

8

asks the Court to make inferences in favor of the moving party and assumes that the Court can make credibility determinations or weigh evidence at the summary judgment stage, which, it is well-established, the Court cannot do. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Defendants first argue that the Court should not have found a genuine issue of material fact as to whether Harwood was ostracized after her November 27, 2017 confrontation with Defendant Gardner because the Court noted that there was evidence that Gardner replied to several text messages from Harwood during the period of alleged ostracization. (ECF No. 42, Motion for Reconsideration, PgID 1842.) Defendants also point to evidence showing that Harwood and Gardner's relationship deteriorated prior to November 27th. (*Id.*) Defendants are correct that the text messages conflict with Harwood's testimony that Gardner froze her out after their confrontation, but that conflict is evidence of a genuine dispute of material fact. The Court cannot discount Harwood's testimony at the summary judgment stage because it finds it less probative than the text message evidence.

Defendants' second argument is similar. They say that Gardner's testimony that he began to consider terminating Harwood in the fourth quarter of 2017 is not relevant because the fourth quarter includes October, November, and December.

(*Id.* at PgID 1843.) Defendants are right that Gardner's statement could indicate that he started thinking about firing Harwood before November 27th, but it could also indicate that he started thinking about it right after the November 27th confrontation. Alone, this evidence could not establish causation, but, combined with the other evidence, it is certainly relevant, especially at the summary judgment stage where the Court is required to draw all reasonable inferences in favor of the non-moving party. *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015). One inference that is available from Gardner's testimony is that he began to consider terminating Harwood sometime after November 27th.

Defendant's third argument also asks the Court to weigh the evidence in the record and reach a conclusion, rather than identify a conflict for a jury to resolve. They say that the record refutes one of the possible interpretations of the email from General Counsel Rob Smith asking if Harwood needed any follow up after the November 27th confrontation because Harwood agreed, in her deposition, that that confrontation began as part of a conversation about a deployment issue. (ECF No. 42, Motion for Reconsideration, PgID 1843–44.) The Court said that the email could be interpreted, by a jury, to "indicat[e] that Gardner felt her charge of discrimination on November 27th was different-in-kind than her previous

10

complaints." (ECF No. 40, O&O, PgID 1831.) The Court based this finding on the following exchange during Harwood's deposition:

> Q: Why did, just because Rob Smith asked you whether or not you wanted any further follow-up concerning that, the deployment issue, did you think that Marc was retaliating against you for anything you had said in that November 27th meeting?
>
> A. Well, in the course of my tenure, Marc and I had had numerous, many conversations about—I've given you some examples today around decisions that he had made that I had a different—I had an opinion that differed from his. *And we had had occasions where we had had conversations about, you know, the fact that I was concerned about his treatment of me and it being related to my gender. But I had never had an occasion where the general counsel followed up with me, via e-mail, about one of those conversations.* So, it was perplexing to me that Marc had gone to Rob to reach out to me to see if there was anything that we needed to follow up on.

(ECF No. 29-4, Harwood Dep., PgID 1489 (emphasis added).) Even if Defendants interpret this exchange and the reason for the email differently, this is enough evidence for a jury to infer that something about the November 27th interaction changed the way Gardner treated Harwood, so it is evidence that supports an inference that the November 27th confrontation triggered Gardner's decision to terminate Harwood. Again, the Court must only identify conflicts in the evidence at the summary judgment stage, not resolve them.

11

Fourth, Defendants take issue with the fact that the Court, in its retaliation analysis, considered Harwood's testimony that her relationship with Gardner deteriorated over time because he treated her differently based on her gender even though she abandoned her disparate-treatment claims. (ECF No. 42, Motion for Reconsideration, PgID 1844.) Defendants argue that there would be no basis for a jury to hear evidence regarding disparate treatment because Harwood is not entitled to damages on that basis, so any such evidence is not relevant to retaliation. (*Id.*) The Court disagrees. Harwood's general narrative is that she was treated differently based on her gender, that she regularly provided constructive criticism about that treatment and the general treatment of women at NAB, that she reached a breaking point on November 27th and confronted Gardner about the way he treated her, based on her gender, in a more direct and forceful way than ever before, and that confrontation catalyzed Gardner's decision to terminate her. (*See* ECF No. 35, MSJ Response, PgID 1700–05 (detailing narrative).) In order for a jury to credit this narrative, which is supported by the previously-identified pieces of evidence, that jury must be given some evidence explaining why Harwood felt she was treated differently based on her gender. So, disparate treatment evidence is relevant to Harwood's retaliation claim and the Court did not err by relying on it.

12

Finally, Defendants argue that, even if the previously described evidence supports a finding of causation at the prima facie stage, it is insufficient to satisfy the higher burden of proof at the pretext stage. (ECF No. 42, Motion for Reconsideration, PgID 1844–49.) As described above, Harwood has produced sufficient evidence for a jury to believe that Gardner decided to fire Harwood as a result of their November 27, 2017 confrontation, when Gardner said that he would "maybe" treat Harwood differently if she was a "dad" instead of a "mom" and she told him that he had to stop treating her differently because she is a woman. (*See* ECF No. 29-4, Harwood Dep., PgID 1292–93 (recounting confrontation).) This is enough evidence for a jury to believe that Gardner's stated reasons, the ongoing managerial-style and personality conflict between him and Harwood and his concerns about her performance during the Total Merchant Services (TMS) acquisition, were not the actual motivation for Harwood's termination. (*See* ECF No. 26, MSJ, PgID 165, 174; ECF No. 37, Reply, PgID 1764–65 (articulating these reasons).)

Further, a jury could find that Gardner's reasons were pretext for retaliation based on the timing of Harwood's alleged performance problems, the confrontation, and Gardner's decision to terminate Harwood. The TMS acquisition

13

was in June of 2017, months before Gardner said that he began to consider terminating Harwood. (*See* ECF No. 40, O&O, PgID 1799 (describing TMS acquisition).) Further, the managerial-style and personality conflict escalated in mid-2017. (*See id.*) So, just as an intervening non-retaliatory reason that occurs between the protected activity and the materially adverse employment action can dispel any inference of causation, an intervening act of protected activity that occurs between the stated reason for the materially adverse action and the adverse action itself can cast doubt on the veracity of the stated reason. *Cf. Kenney*, – F.3d –, 2020 WL 3638388, at *4. Accordingly, Harwood produced sufficient evidence on the issue of pretext, and the Court did not err in denying Defendants' Motion for Summary Judgment on the retaliation claims.

### IV. CONCLUSION

For those reasons, the Court DENIES Defendants' Motion for Reconsideration. (ECF No. 42.)

IT IS SO ORDERED.

Dated: July 8, 2020

s/Paul D. Borman
Paul D. Borman
United States District Judge