UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERESA HARWOOD,

Case No. 18-cv-12567

                    Plaintiff,

v.                                      Paul D. Borman
                                        United States District Judge

NORTH AMERICAN BANCARD LLC,
and MARC GARDNER,                       Elizabeth A. Stafford
                                        United States Magistrate Judge

                    Defendants.
_____/

## OPINION & ORDER GRANTING, IN PART, AND DENYING, IN PART DEFENDANTS' MOTIONS *IN LIMINE* (ECF NOS. 46 & 47)

### I.  INTRODUCTION

Now before the Court, in this employment discrimination case, are Defendants North American Bancard LLC (NAB) and Marc Gardner's two Motions *in Limine* (ECF Nos. 46 & 47.) They seek to prevent Plaintiff Teresa Harwood from "arguing or introducing evidence for the purpose of trying to show that she was terminated, or otherwise subject to a materially adverse action, because she [is] a woman," (ECF No. 46, PgID 1900), to prevent Harwood from arguing that Gardner is sexist and that he acted in conformity with that trait at relevant times in Harwood's tenure at NAB, (ECF No. 47, PgID 1911–13), and to exclude several specific pieces of evidence that support the allegedly impermissible propensity inference regarding Gardner's character as sexist, (*id.* at PgID 1913–23).

As explained below the Court is not inclined to issue a blanket ban on the broad categories of evidence that Defendants seek to exclude, so the Court denies, in part, each Motion. However, Defendants do raise legitimate concerns in each Motion *in Limine*, so the Court also grants each Motion, in part.

## II.   STANDARD OF REVIEW

The decision to grant or deny a motion *in limine* is within the sound discretion of the trial court. *Branham v. Thomas M. Cooley Law Sch.*, 689 F.3d 558, 562 (6th Cir. 2012). "A motion *in limine* is any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 560 (6th Cir. 2013) (internal quotation marks omitted). A motion *in limine* is "generally used to ensure evenhanded and expeditious management of trials by eliminating evidence that is clearly inadmissible for any purpose," and should, therefore, be used only to eliminate evidence that is "clearly inadmissible on all potential grounds." *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) (citing *Jonasson v. Lutheran Child and Family Serv.*, 115 F.3d 436, 440 (7th Cir. 1997) and *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984)). If the trial court cannot determine whether the evidence is clearly inadmissible without the context of trial,

it should defer the evidentiary ruling until trial. *Id.* "[I]n limine rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000) (citing *Luce*, 469 U.S. at 41–42 (1984)).

"Motions *in limine* typically involve matters which ought to be excluded from the jury's consideration due to some possibility of prejudice or as a result of previous rulings by the Court." *Provident Life & Acc. Ins. Co. v. Adie*, 176 F.R.D. 246, 250 (E.D. Mich. 1997). They are "designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Louzon*, 718 F.3d at 561. Accordingly, they should not be used to resolve disputed factual matters, *Provident Life*, 176 F.R.D. at 250, nor should they be used to "litigate matters that have been or should have been resolved" using a motion for summary judgment. *Louzon*, 718 F.3d at 561. Finally, "even in cases of shaky evidence, vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking such evidence, not exclusion." *Robinson v. Runyon*, 149 F.3d 507, 515 (6th Cir. 1998).

### III.   ANALYSIS

Under the Federal Rules of Evidence, evidence is admissible so long as it is relevant and not barred by a specific rule or statute. Fed. R. Evid. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

Rule 403, upon which Defendants rely for the majority of their objections, allows a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. When analyzing arguments under Rule 403, courts must remember that "[a]ll evidence presented by a party opponent, is prejudicial to the other side, to a greater or lesser degree," so "[t]he relevant question is whether its probative value is substantially outweighed by its danger of *unfair* prejudice." *Doe v. Claiborne Cty., Tenn.*, 103 F.3d 495, 515–16 (6th Cir. 1996) (emphasis added). "Unfair prejudice 'does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence.'" *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir.1993) (quoting

4

*United States v. Schrock*, 855 F.2d 327, 333 (6th Cir.1988). Instead, prejudice is "unfair" when the evidence "suggest[s] a decision on an impermissible basis." *Id.*

Each of Defendants' arguments is analyzed separately below.

**A.     Evidence that Harwood was Discriminated Against Based on Her Sex (ECF No. 46)**

There is very little dispute over Defendants' first Motion *in Limine*. Defendants, citing the Court's dismissal of Harwood's sex discrimination claims, contend that Harwood should be barred, under Rule 403, from arguing, or introducing evidence supporting, her dismissed claim that she suffered a materially adverse employment action because of her sex. (ECF No. 46, PgID 1903.) In response, Harwood "admits that the Court dismissed [her] gender discrimination claim" and acknowledges that she "will not argue that her termination was due to her gender or seek damages for such a claim" but, she argues that evidence of gender discrimination is nevertheless relevant because it shows that her complaint of gender discrimination, which underlies her retaliation claim, was made in good faith. (ECF No. 49, PgID 1933–34.) Harwood further states that her evidence of gender discrimination is also relevant to her hostile environment claim. (*Id.* at PgID 1937–38.)

5

Defendants, in their Reply, agree that "Harwood can discuss the alleged gender discrimination underlying her protected activity" and also agree that "she can try to establish her harassment claim with *admissible* evidence showing harassment because of sex." (ECF No. 52, PgID 2078–79 (emphasis in original).) Defendants, do however, argue that some of the evidence that Plaintiff intends to offer on her retaliation and hostile environment claims is unfairly prejudicial because it creates a risk that the jury would deliver a verdict against them for misconduct outside of the scope of Harwood's claims. (*Id.* at PgID 2079.)

The Court agrees with both parties regarding the substantial part of Defendants' first Motion *in Limine* (ECF No. 46)—Plaintiff Harwood may not argue that her termination, or any other materially adverse employment action, was the result of her gender, and she may not offer evidence in support of that argument.

The Court, however, denies the first Motion *in Limine* to the extent that it attempts to exclude evidence of gender-based differential treatment offered in support of Harwood's Title VII hostile environment claim against NAB and her retaliation claims against Gardner under both ELCRA and Title VII. This evidence is relevant in two respects.

6

First, Harwood must show, for her retaliation claims, that she had a good faith belief that the practice she was opposing was unlawful. *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312–13 (6th Cir. 1989). This requirement makes Harwood's testimony regarding her exclusion from business meetings and Gardner's habit of asking her male colleagues about issues in Harwood's purview relevant—this testimony helps show that, in the November 27th confrontation with Gardner, Harwood opposed a practice that she genuinely believed was sex-based discrimination.

Second, this same category of evidence—evidence that Gardner treated Harwood differently than her male colleagues in the C-Suite—is a significant part of Harwood's hostile environment claim. The Court already found that a jury could believe that Gardner's treatment of Harwood "was based, at least in part, on the fact that she is a woman," (ECF No. 40, O&O, PgID 1826), so there is no need to implement the procedure urged by Defendants and require Plaintiff to proffer evidence "from which a reasonable fact finder could infer that the conduct was motivated by anti-female animus" outside the presence of the jury before admitting evidence of the conduct itself. (ECF No. 52, Reply, PgID 2079–80 (citing *Marotta*

*v. Ford Motor Co.*, No. 14-cv-11149, 2016 WL 3197425, at *6 (E.D. Mich. June 9, 2016).)

Finally, the probative value of this evidence is not substantially outweighed by the risk of unfair prejudice. On the one hand, the probative value of evidence relating to Gardner's treatment of Harwood, especially in relation to Harwood's hostile environment claim, is quite significant. In fact, a key factual dispute that the jury must resolve is whether Gardner's conduct toward Harwood was motivated by a personal conflict or by anti-woman animus, so, in order for Harwood to have a full opportunity to present her case, she must be able to present evidence of Gardner's conduct. On the other hand, the danger of unfair prejudice or jury confusion is minimal. Gardner's alleged conduct—excluding Harwood from meetings and business decisions and going around her for answers—is not likely to evoke the type of emotional response in jurors that would cause them to find him liable for conduct outside of Harwood's claims. Accordingly, Defendant's first Motion *in Limine* (ECF No. 46) is denied insofar as it seeks to exclude evidence of Gardner's differential treatment of Harwood, but granted to the extent that it seeks to prevent Harwood from arguing that she suffered a materially adverse employment action because she is a woman.

**B.    Specific Evidence of Hostile Environment Sexual Harassment (ECF No. 47)**

In their second Motion *in Limine*, Defendants contend that several specific pieces of evidence that Harwood may offer to support her Title VII hostile environment claim are inadmissible under Rule 403, as well as under the rules that exclude hearsay and speculation by witnesses. (ECF No. 47, PgID 1913–23.) Defendants also argue that Harwood should be forbidden, under Rule 404, from arguing or insinuating that Gardner is sexist and that his conduct toward Harwood was in accordance with that character trait. (*Id.* at PgID 1911–13.) As detailed below, the Court grants Defendants' Motion, in part, and denies it, in part.

**1.  Propensity Argument**

Under Rule 404(a), "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). Further, under Rule 404(b), evidence of acts other than the acts at issue is not admissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). These rules, which prevent "generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged," mitigate the risk

9

that a jury will punish a defendant for acts other than the ones at issue, or for having a bad character. *Old Chief v. United States*, 519 U.S. 172, 180–81 (1997).

Here, Defendants' argument under Rule 404 is narrow—they want to bar Harwood from explicitly or implicitly arguing that Gardner has the bad character trait of being sexist, and because Gardner is sexist, he was being sexist when he excluded Harwood from meetings and asked her male colleagues and subordinates about issues under her purview. (ECF No. 47, PgID 1911–13.) They do not argue, under Rule 404, at least, that Harwood cannot introduce evidence of specific sexual incidents to prove a hostile environment. (ECF No. 53, PgID 2084.) Harwood, in her response, indicated that she would introduce evidence of specific acts "to demonstrate the existence of a hostile work environment, irrespective of Gardner's character." (ECF No. 50, PgID 1995.) Harwood also argues that a "general atmosphere of sexism" is probative for a hostile environment claim. (*Id.* at PgID 1993–94 (citing *Wanchik v. Great Lakes Health Plan. Inc.*, 6 F. App'x 252 (6th Cir. 2001).)

Plaintiff Harwood is correct that specific evidence showing that a general atmosphere of sexism exists in a workplace is relevant and probative for a sexual harassment hostile environment claim, and that evidence should not be considered

other acts evidence under Rule 404. *See Marotta*, No. 14-cv-11149, 2016 WL 3197425, at *6 (finding that allegedly sex-based comment, in combination with other alleged sexually harassing conduct, was not an "other act" within the scope of Rule 404). That does not mean, however, that Harwood is permitted to make the explicit propensity argument that Gardner's conduct, such as excluding her from business meetings, was based on sex because Gardner was acting in accordance with his character as a sexist. That explicit argument is barred by Rule 404. *Cf. Old Chief*, 519 U.S. at 180–81.

The implicit version of the propensity argument, which Defendants also seek to ban, is harder to ban entirely. A required element of a hostile environment claim is that the harassing conduct was based on sex. *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 270 (6th Cir. 2009). One method of proving that conduct was based on sex is to show that it "reflects an 'anti-female animus.'" *Wanchik*, 6 F. App'x at 263. In making this determination, fact-finders can and should consider all of the conduct in the aggregate. *See Daniels v. Pike Cty. Comm'rs*, 706 F. App'x 281, 288 (6th Cir. 2017) (considering all harassing behavior in aggregate to find that it raised "at least the specter of anti-female animus"). Therefore, although Harwood should attempt prove that Gardner's

11

exclusionary conduct was based on sex using evidence that he treated her differently than her male C-Suite colleagues, not by arguing that it was behavior in keeping with his sexist character, the Court cannot prevent Harwood from arguing that the totality of Gardner's behavior reflects an anti-female animus.

### 2.  2014 Holiday Party Photo

The first specific piece of evidence that Defendants seek to exclude is a photo of Gardner with two unidentified women, taken at the 2014 NAB holiday party. (ECF No. 47, PgID 1914–15.) They argue that the photo is inadmissible because Harwood's interpretation of it is speculative, and that its probative value is substantially outweighed by a danger of unfair prejudice. (*Id.*) Neither argument is persuasive.

First, Defendants argue that Harwood may not testify as to the meaning of the photo because she was not there when it was taken. (*Id.* at PgID 1914.) They analogize Harwood's interpretation of the photo to a witness's testimony interpreting a letter that he had neither written nor received in *Smith v. United States*, No. 3:95cv445, 2012 WL 1453570, at *27 (S.D. Ohio 2012), and argue that any interpretation of the photo that Harwood may offer would be too speculative to go before a jury. (*Id.*) Defendants' analogy to *Smith* is misplaced. Here, there is no

dispute that Harwood was not present when the photo was taken, and so lacks personal knowledge of what Gardner and the two women in the photo intended to depict. There is no dispute, however, that Harwood viewed the photo when it was uploaded onto NAB's intranet and found it inappropriate. Under Rule 701, Harwood may testify to her opinion about what the photo depicts and why she found it inappropriate so long as it is "rationally based on [her] perception" of the photo at the time she saw it on NAB's intranet. Fed. R. Evid. 701.

Second, the photo is sufficiently probative to outweigh any danger of unfair prejudice against Gardner. In cases involving claims of hostile environment harassment, any incident of inappropriate sexual behavior directed toward women within the workplace is probative, so long as the plaintiff was aware of it, because each incident contributes to the plaintiff's "perception of a hostile work environment." *Wanchik*, 6 F.App'x at 262. This is the case because the test of a hostile work environment is a totality-of-the-circumstances test that, "of necessity, includes all incidents of alleged harassment." *Williams v. General Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999). In this context, removing even one incident of inappropriate behavior deprives the plaintiff of the full opportunity to present her case to the jury and could be an abuse of discretion. *Runyon*, 149 F.3d at 515.

Defendants argue that the fact that the photo was taken at the NAB holiday party rather than during work hours, and the fact that the two women in the photo were not NAB employees, reduces the probative value of the photo. (ECF No. 47, PgID 1915.) Defendants, do not, however, cite any law indicating that employer-sponsored holiday parties are not part of the work environment, nor is the Court aware of any such case. *But see Shiner v. State Univ. of New York*, No. 11-cv-01024, 2012 WL 5398658, at *3 (W.D. N.Y. 2012) (finding that allegations of harassment at "an employer-funded party" were sufficient to state a claim for hostile work environment harassment). Further, Harwood saw the photo after it was uploaded onto NAB's intranet, which is certainly part of the NAB work environment.

Thus, the photo has more than minimal probative value, which is not substantially outweighed by the risk that Harwood will use it to portray Gardner as a sexist and then make an impermissible propensity argument. This is especially so because the Court is granting Defendants' request to preclude Harwood from making the explicit propensity argument that all of Gardner's conduct stems from his character as sexist—Harwood will not be able to use the photo to say that it

14

shows "everything about how Mark Gardner views women." (ECF No. 35, MSJ Response, PgID 1692.)[1]

### 3. Strip Club Evidence

The second piece of specific evidence that Defendants seek to exclude is Harwood's testimony that a female subordinate, Ashley Fisher, told her that Gardner and a few other NAB employees took her to a strip club after the 2014 holiday party. (ECF No. 47, PgID 1915–17.) Relatedly, they also seek to prevent Harwood from testifying that an unidentified male executive told her that Gardner tried to get him to go to a strip club in Vegas. (*Id.* at PgID 1917.) They argue that this evidence is hearsay, and that it is substantially more prejudicial than it is probative under Rule 403. (*Id.* at PgID 1915–18.)

Harwood concedes that her testimony regarding Fisher's trip to the strip club is hearsay, but argues that there are non-hearsay means by which she could introduce this evidence. (ECF No. 50, PgID 2000.) She also argues that evidence regarding this trip is probative because it demonstrates that "Gardner felt it was

---

[1] To prevent this propensity argument, the Court will not permit Plaintiff to show the photo during her opening statement and her closing argument.

appropriate to take subordinate female employees to a business which by its nature

is sexually demeaning and objectifies women." (*Id.*)

It is therefore undisputed that Harwood cannot testify as to what Fisher told

her regarding the visit to the strip club under the rule against hearsay. Fed. R. Evid.

802. The Court also finds that Harwood's testimony about Gardner trying to get

the male executive to go to a strip club with him in Vegas is inadmissible hearsay.

If Harwood offers non-hearsay evidence of this incident, it is not

inadmissible under Rule 403—as explained above, all incidents of inappropriate

sexual behavior directed toward women within the workplace are probative, so

long as the plaintiff was sufficiently aware of it for it to contribute to her

"perception of a hostile work environment." *Wanchik*, 6 F.App'x at 262. Although

this incident was farther removed from the work environment than the photo,

because it was after the employer-funded holiday party rather than during it, which

reduces its probative value, that value is still not substantially outweighed by the

danger of unfair prejudice. The fact that Gardner went to a strip club with a female

subordinate does cast him a poor light, but given the fact that the central

allegations in this case are that Gardner treated Harwood poorly because she is a

woman, this fact does not add "an emotional element that was otherwise lacking in

this case," and thereby suggest a decision on an improper basis. *Cf. Runyon*, 149 F.3d. at 515 (introduction of additional evidence of racism would not increase danger of unfair prejudice where racism was already central issue).

### 4. April 2014 Trade Show

The third specific category of evidence that Defendants ask to exclude is testimony relating to an NAB event at a trade show in Las Vegas, where Gardner hired female presenters, who Harwood described as scantily-clad models, to promote an NAB product. (ECF No. 47, PgID 1918–20.) They argue first, under the rule against hearsay, that Harwood may not testify that some of NAB's clients left the event early and told Harwood that it was because the attire of the presenters violated their company code of conduct. (*Id.* at PgID 1918–19.) Defendants then argue that Harwood should be precluded from testifying that she saw a presenter bare her breasts at the event under Rule 403, and, in fact, they argue that any testimony relating to the hiring of presenters should be excluded under Rule 403. (*Id.* at PgID 1919–20.)

Harwood does not address Defendants' hearsay argument, which the Court construes as a concession that her testimony about the statements of the clients who left early is inadmissible hearsay. Therefore, Harwood is barred from offering

the clients' statements for the truth of the matter asserted—that they left the event because the presenters' outfits violated the company code of conduct.

Defendants' Rule 403 arguments are less persuasive. First, the allegation that Gardner hired the presenters to wear skimpy outfits to promote the NAB product is one of the incidents that Harwood identifies as contributing to her perception of NAB as having a sexually-hostile work environment, and it is therefore it is probative on the factual questions of whether Harwood perceived the environment as hostile and whether the environment was objectively hostile. *Cf.* *Wanchik*, 6 F.App'x at 262. The fact that this incident was "isolated" and "remote in time" may make it more likely that a jury will find that the harassment was not sufficiently severe and pervasive to render the workplace hostile, but it does not, as Defendants argue, mean that the probative value of the incident itself is diminished. (ECF No. 47, PgID 1919–20.) Further, although there is some risk that evidence of this event might cause jurors to make the impermissible propensity inference, that risk does not substantially outweigh the probative value of evidence that Gardner hired inappropriately-dressed women to represent NAB at an NAB-sponsored event.

18

Second, although Gardner did not witness the presenter baring her breasts at the event, much less encourage or condone her alleged actions, Harwood's testimony that a presenter did, in fact, bare her breasts at the event, is sufficiently probative to avoid exclusion under Rule 403. The parties dispute whether the presenters were dressed inappropriately and whether the presenters were similar to the type of presenters commonly hired to work trade events. (*Compare* ECF No. 47, PgID 1919 (describing presenters as "contracted talent" similar to the type of "talent" commonly seen at the International Auto Show), *with* ECF No. 50, PgID 2001 (describing presenters as "models" selected from a catalog, wearing outfits that exposed their breasts).) Harwood's account of how at least one of the presenters behaved at the event gives the jury additional context in determining whose description of the presenters to credit. The risk of unfair prejudice—that a jury would hold Gardner and NAB responsible for the presenter's behavior—can be minimized by testimony that Gardner was not present when the behavior occurred and did not condone it, so the evidence need not be excluded to prevent undue prejudice. *Cf. Runyon*, 149 F.3d at 515 (suggesting that presentation of contrary evidence is better antidote to shaky evidence than wholesale exclusion).

### 5.  Rock Formation Comment

The fourth specific piece of evidence that Defendants urge the Court to exclude is evidence that NAB employee Adam McDonald, who is Gardner's cousin and was Harwood's subordinate, commented that a rock formation in a wine cave resembled a clitoris while attending an excursion during an NAB executive off-site trip. (ECF No. 47, PgID 1920–21.) They argue, on the one side of the balance, that this comment lacks probative value because it was made by a subordinate away from the workplace. (*Id.* at PgID 1920 (citing *Duggins ex rel. Duggins v. Steak'N Shake, Inc.*, 3 F. App'x 302, 311 (6th Cir. 2001).) On the other side of the balance, they argue that Harwood will use the comment to further her propensity argument and that she will use the fact that McDonald is Gardner's cousin to impute the comment to Gardner. (*Id.* at PgID 1920–21.)

Defendants' Rule 403 balancing is, once again, off. First, this comment is easily distinguishable from the incident in *Duggins*, which "occurred at a private party after working hours given by an hourly employee who did not even work at the same restaurant as [the] [p]laintiff, with no member of management present." 3 F. App'x at 311. In that case, the Sixth Circuit found that the incident could not form the basis of a hostile environment claim because it was outside of the work

environment, after work hours, and perpetrated by a non-supervisory employee. Here, the fact that McDonald did not supervise Harwood does not mean that his comment, which occurred on a work-sponsored trip at an outing arranged for NAB employees, cannot be a circumstance that must be taken into account in a hostile environment claim, which is evaluated using a totality-of-the-circumstances test. *Williams*, 187 F.3d at 562. So, the probative value of this comment is much greater than the value Defendants assign it in their Rule 403 balancing. And, the danger of unfair prejudice is less pronounced than Defendants claim. This comment, while inappropriate, is unlikely to trigger an emotional reaction in jurors or cause them to confuse the issues. Therefore, the comment itself will not be barred from trial.

The Court agrees with Defendants, however, that the fact that McDonald is Gardner's cousin has very little probative value in the context of this incident, and that there is some risk that the familial connection could cause jurors to attribute the comment to Gardner himself. (ECF No. 47, PgID 1920–21.) Given the minimal probative value of establishing that Gardner's cousin made the comment and the comparatively greater risk of unfair prejudice, Harwood may not identify the speaker as Gardner's cousin. She may, however, produce evidence that Gardner's

cousin worked at NAB for the purpose of showing that the practice of hiring relatives was not uncommon at NAB. (*See* ECF No. 50, PgID 2002.)

### 6. Topless Beach Patron

The fifth specific piece of evidence that Defendants ask to exclude is Harwood's testimony that, while NAB executives were spending time in the pool during a different NAB executive off-site in St. Maartens, several of her male co-workers, including Gardner, made an effort to observe a topless yoga instructor that walked by on her way to the beach and made inappropriate comments, such as expressing a wish that she was running. (ECF No. 47, PgID 1921–22.) Defendants make the same argument, citing *Duggins*, that "after-hours, off-site comments made by Harwood's co-workers would not support a harassment claim," so the probative value of the comments are minimal and the prejudicial value is high because it risks the jury "unfairly punish[ing] Gardner and NAB merely because St. Maartens has different cultural standards than jurors are likely accustomed to." (*Id.*)

This argument is incorrect for the same reasons as Defendants' argument regarding McDonald's comment is wrong. The probative value of the evidence is more than minimal because this incident occurred during an NAB-sponsored trip

22

and involved a group of NAB employees, so it is not the kind of after-work, private event that was found to be outside the work environment in *Duggins.* 3 F. App'x at 311. Further, this evidence is probative because it involves NAB employees behaving, on a work trip, in a way that a jury could find inappropriate, even though Defendants argue that the behavior was merely "juvenile." Once again, this is a relevant piece of the hostile environment puzzle, so Harwood has a right to present this evidence as part of her case. Finally, the risk of jury confusion or unfair prejudice is minimal—the fact that it is culturally appropriate for women to go topless at beaches in St. Maartens does not change the standard of appropriate behavior at an employer-sponsored retreat.

### 7.  Gardner's Relationship with Female Vendor

Harwood does not contest Defendants' final argument, so she is barred from offering testimony implying that Gardner had an extramarital affair with an NAB vendor. (ECF No. 50, PgID 2003.)

### IV.   CONCLUSION

For those reasons, the Court denies, in part, and grants, in part, Defendants' Motions *in Limine*. (ECF Nos. 46 & 47.) Harwood may not make the following arguments or introduce the following evidence:

- Harwood may not argue that her termination, or any other materially adverse employment action, was the result of her gender;

- Harwood may not make the explicit propensity argument that Gardner's conduct, such as excluding her from business meetings, was based on sex because Gardner was acting in accordance with his character as a sexist;

- Harwood may not identify the speaker of the comment about the rock formation as Gardner's cousin; and

- Harwood may not offer any of the following hearsay testimony:

  o  That Ashley Fisher told her that Gardner and other NAB employees took her to a strip club after the 2014 Holiday Party;

  o  That an unidentified male executive told her that Gardner tried to get him to go to a strip club in Vegas; and

  o  That certain clients told her that the left the April 2014 NAB event at the trade show in Las Vegas early because the presenters' outfits violated the company code of conduct.

IT IS SO ORDERED.


Dated: August 31, 2020                    s/Paul D. Borman
                                          Paul D. Borman
                                          United States District Judge

24