UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

TERESA HARWOOD,

    Plaintiff,

v.

NORTH AMERICAN BANCARD LLC,
and MARC GARDNER, jointly and severally,

    Defendants.

Case No. 18-cv-12567

Hon. Paul D. Borman

Magistrate Judge
Elizabeth A. Stafford

---

Jennifer L. Lord (P46912)
Robert W. Palmer (P31704)
Pitt McGehee Palmer
  & Rivers, PC
Attorneys for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, Michigan 48067
jlord@pittlawpc.com
rpalmer@pittlawpc.com

Elizabeth P. Hardy (P37426)
Thomas J. Davis (P78626)
KIENBAUM HARDY VIVIANO
PELTON & FORREST P.L.C.
Attorneys for Defendants
280 N. Old Woodward Ave., Suite 400
Birmingham, MI 48009
(248) 645-0000
ehardy@khvpf.com
tdavis@khvpf.com

---

**Defendants' Reply Brief in Support of Their**
**Motion in Limine Regarding Plaintiff's Damages Claims**

Defendants' motion in limine argued, in detail, that Rule 26(a)(1)(A)(iii) expressly requires a party to offer a *computation* of their damages prior to the end of discovery—and that exclusion is the remedy for a violation. Conspicuously absent from Harwood's response brief is any mention of this rule or refutation of the relevant case law; instead, Harwood effectively concedes her failures by trying to smuggle into the record an "amendment" to her initial disclosures that—for the first time—purports to calculate her back pay, and to enumerate and calculate her purported front pay losses. *See* ECF No. 60, PageID.2273 n.3; ECF No. 60-2.

This is, quite simply, too little too late. Discovery has been closed for *years* at this point, and Harwood's damages calculations are thus *years* overdue. Harwood's failure to address Defendants' rules-based arguments for exclusion thus constitutes a forfeiture. Regardless, she largely concedes the merits of Defendants' arguments, and her newfound claim that a $1.4 million equity award from her new employer is a "collateral source" – akin to unemployment benefits or worker's compensation – is preposterous. Defendants' motion in limine should be granted in full.

## Argument

**I.      Exclusion of undisclosed calculable damages is the proper remedy here.**

Harwood's primary argument is that Defendants' motion is improper because it "seeks to limit a damage recovery *altogether*." ECF No. 60, PageID.2273. This is inaccurate; Defendants acknowledged that a party does not need to calculate

emotional distress and punitive damages, and thus the motion in limine did not seek to exclude evidence of those categories of damages. ECF No. 57, PageID.2120 n.1.

More importantly, Harwood ignores that the law explicitly provides for the exclusion of untimely-disclosed damages. *See Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*, 596 F.3d 357, 370 (6th Cir. 2010). In *Bessemer*, the plaintiff did not "timely disclose" the basis for his lost-profits damages theory, and so the Court excluded the evidence under Rule 37. The Sixth Circuit made clear that exclusion is "mandatory unless there is a reasonable explanation why Rule 26 was not complied with or the mistake was harmless." *Id.* And Defendants cited other case law similarly excluding evidence of untimely-disclosed, uncalculated damages at the motion-in-limine stage. *See* ECF No. 57, PageID.2134. Harwood's citation to case law explaining the rare circumstances where back-pay might be denied *on the merits*, as opposed to a mandatory exclusion under Rule 37, thus misses the point.

In short, there is no dispute that Harwood failed to provide a timely calculation of back-pay damages or front-pay damages. Harwood does not argue that her failure to do so was "substantially justified." And she does not claim that the failure is harmless—nor could she. By waiting to disclose until now, Defendants have been robbed of the ability to evaluate, test, and potentially obtain an expert to address those damages theories. That is especially true of her front pay claims, which did not even have a dollar value attached to them until seven days ago.

**II.     The motion in limine is not "premature" given that discovery is closed, and Harwood admittedly does not have evidence to support her claims.**

Harwood next claims that the motion in limine is "premature" because the Court should only exclude evidence that is "clearly inadmissible for any purpose before trial." ECF No. 60, PageID.2274. Again, Harwood's response misses the point: speculation is clearly inadmissible, and thus a party cannot present damages theories to a jury that lack evidentiary support. *See, e.g., JGR, Inc. v. Thomasville Furniture Indus., Inc.*, No. 1:96 CV 1780, 2005 WL 8168275, at *1 (N.D. Ohio Mar. 16, 2005). And here, Harwood largely *concedes* that she has no evidence to support several aspects of her damages theories, and she offers no authority to suggest that she can argue for categories of damages for which she admittedly has no evidence.

**A. Harwood admits she has no evidence of EBITDA damages.** With respect to EBITDA damages, Harwood admits—explicitly or tacitly—every point that Defendants' brief asserted: (1) her uncalculated back-pay figures were intended to include large EBITDA bonuses; (2) EBITDA bonuses were calculated on an objective basis from financial figures; (3) her original 2018 back-pay figure double-counted her presumed EBITDA bonus; and (4) she has no evidence of the objective data needed to calculate EBITDA bonuses from 2019 to the present. ECF No. 60, PageID.2276. Indeed, the "amended" back-pay damages calculations she seeks to smuggle into the record contains question marks in place of EBITDA awards for 2018 through the present, ECF No. 60-2, PageID.2285-2286, and her back-pay claim

-3-

for 2017 through 2020 has been reduced from $4.0 million to $2.3 million, *compare id. with* ECF No. 57-3, PageID.2152.

Despite conceding that she has no evidence to support an argument for EBITDA bonuses after 2018, Harwood claims that the motion in limine should be denied because she has served untimely discovery and wants to take an untimely 30(b)(6) deposition to fill this hole in her case. ECF No. 60, PageID.2276. While Defendants will address this untimely discovery more fully when the responses thereto are "due," it should suffice to say that (1) the scheduling order's discovery cut-off was over two years ago; and (2) Harwood has no right to a do-over simply because she neglected to seek potentially relevant evidence.[1] The motion in limine precluding her argument for EBITDA bonuses after 2018 should be granted.

**B. Harwood's lack of expert testimony precludes a front pay claim.**
Harwood likewise concedes the substance of Defendants' arguments on front pay. She does not deny that front-pay claims generally require expert testimony, and admits that she has no expert and cannot offer expert testimony herself. So instead, she has now disclosed two highly simplistic front-pay damages models—one with

---

[1] Harwood's claim that Defendants owe her "reciprocal" discovery, ECF No. 60, PageID.2272 n.1, is baseless. NAB served *timely* mitigation-of-damages discovery, which Harwood had an ongoing duty to supplement. NAB's recent deposition of Harwood related to supplemental mitigation evidence. By contrast, Harwood did *not* serve timely discovery for the financial information she now seeks. Defendants thus have nothing to "update," and it is too late for Harwood to serve new requests.

annual bonuses, one without—that (1) assume she would have stayed at NAB until age 65 with her salary never changing; and (2) likewise assume that her current employer Payroc will never give her a raise either (in an obvious effort to minimize mitigation). ECF No. 60, PageID.2277-78; ECF No. 60-2, PageID.2287.

Harwood's new claims effectively demonstrate the grossly prejudicial nature of her late disclosure, as Defendants were unable to test any of these highly unlikely assumptions in discovery.[2] And although she reverse-engineered these new theories to avoid seeking elements of front pay that require expert testimony—like estimating future raises and earnings growth—what remains still cannot be introduced with lay testimony. For one thing, work-life is an expert matter and C-Suite executive positions generally are not lifetime jobs. *See* ECF No. 57, PageID.2138. Harwood, however, merely asserts that she'd have remained NAB's COO until the year 2031. For another, front pay must be reduced to present value—generally an expert matter as well—but Harwood's figures are not reduced to present value. So even if these theories were not untimely, they are still inadmissible expert testimony.

**C.    Harwood still has not disclosed or explained a change-in-control damages theory.** Finally, regarding the change-in-control future damages theory, Harwood offers no response to Defendants' arguments that (a) Harwood could not

---

[2]Moreover, the assumption that Harwood would have remained COO indefinitely is flatly at odds with her other theory, *see infra*, that NAB is going to be sold before she retires, thus depriving her of a presumed change-in-control bonus.

possibly forecast when NAB might be sold; and (b) even if she could, she would need an expert to establish what NAB's sales price would be, to come up with a damages model. *See* ECF No. 57, PageID.2140. In fact, Harwood concedes that it is "not possible" for her to value the change in control. ECF No. 60, PageID.2280. Her only response is the non-sequitur that another employee at NAB would receive a flat $1 million payment in the event of a change in control. *Id.* But what difference does that make? That was not Harwood's deal; her deal was 1% of NAB's future sales price. Ultimately, this argument fails for three reasons: (1) procedurally, Harwood *still* does not even enumerate this aspect of damages, let alone calculate it; (2) it is hopelessly speculative; and (3) it requires expert testimony, but she has no expert.

### III. Harwood's $1.4 million in equity received from her new employer must be considered when assessing mitigation of damages.

Finally, Harwood does not deny that, in addition to her Billingtree/Repay salary, she received $1.4 million worth of equity in connection with her employment there. *See* ECF No. 60, PageID.2279. Instead, she makes the remarkable assertion that this enormous financial gain—which, again, she explicitly received in exchange for profit shares she had received for being a Billingtree executive—should not count as mitigation of damages because of the collateral source doctrine. *Id.*

This argument fundamentally misconstrues the collateral source doctrine, which prevents the deduction of unemployment benefits, workers' compensation, and the like from back pay. *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1170

(6th Cir. 1996). Such monies are collateral because they are "not paid to discharge a liability of the employer" but rather to "carry out the social policies of the state." *Id.* This is a distinct concept from the "well-established general rule" that a plaintiff must minimize damages by finding new employment after termination, and that her subsequent earnings must be subtracted from any back-pay or front-pay damages award. *See Jackson v. City of Cookeville*, 31 F.3d 1354, 1359-60 (6th Cir. 1994).

The collateral source doctrine is inapplicable here. Billingtree gave Harwood salary, bonuses, and equity to *compensate* her; she did not receive $1.4 million from some collateral source carrying out a "social policy of the state." She would not have received the $1.4 million in the but-for world where she stayed at NAB, and Harwood would receive an unwarranted windfall if this sum was not deducted from her alleged damages. *See* ECF No. 57, PageID.2142-43 (citing numerous cases regarding treatment of equity). The $1.4 million mitigated any damages she suffered after NAB terminated her, and Harwood may not tell a jury to disregard it.

                                        Respectfully submitted,

                                        By: /s/ *Elizabeth Hardy*
                                             Elizabeth Hardy (P37426)
                                             Thomas J. Davis (P78626)
                                        Attorneys for Defendants
                                        280 N. Old Woodward Ave., Suite 400
                                        Birmingham, MI 48009
                                        (248) 645-0000
                                        ehardy@khvpf.com

Dated: January 31, 2022              tdavis@khvpf.com
402892

## Certificate of Service

I hereby certify that on January 31, 2022, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants.

                                          /s/ *Elizabeth Hardy*
                                          Elizabeth Hardy (P37426)
                                          Kienbaum Hardy Viviano
                                          Pelton & Forrest, P.L.C.
                                          280 N. Old Woodward Avenue, Suite 400
                                          Birmingham, MI  48009
                                          (248) 645-0000
                                          ehardy@khvpf.com

402892