UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

TERESA HARWOOD,

      Plaintiff,

v.

NORTH AMERICAN BANCARD LLC,
and MARC GARDNER, jointly and severally,

      Defendants.

Case No. 18-cv-12567

Hon. Paul D. Borman

Magistrate Judge
Elizabeth A. Stafford

---

Jennifer L. Lord (P46912)
Robert W. Palmer (P31704)
Pitt McGehee Palmer
  & Rivers, PC
Attorneys for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, Michigan  48067
jlord@pittlawpc.com
rpalmer@pittlawpc.com

Elizabeth P. Hardy (P37426)
Thomas J. Davis (P78626)
KIENBAUM HARDY VIVIANO
PELTON & FORREST P.L.C.
Attorneys for Defendants
280 N. Old Woodward Ave., Suite 400
Birmingham, MI  48009
(248) 645-0000
ehardy@khvpf.com
tdavis@khvpf.com

---

**Defendants' Motion in Limine Regarding Pretrial Order Evidentiary Disputes**

Defendants North American Bancard LLC and Marc Gardner move this Court in limine excluding evidence identified in Plaintiff's pretrial order. In support of the motion, Defendants state:

1. Defendants contest the admissibility of several of Plaintiff's proposed exhibits. Pursuant to this Court's instruction (*see* ECF No 56), they now file this motion in limine containing specific legal arguments addressing those objections where appropriate.[1]

2. The Court ordered such motions in limine to be filed by March 11, 2022. ECF No. 61, PageID.2330.

3. On March 10, 2022, counsel for Defendants explained the nature of the motion and relief it would be seeking, but did not receive a response, necessitating the filing of this motion.

> KIENBAUM HARDY VIVIANO
> PELTON & FORREST, P.L.C.
>
> By: /s/ *Elizabeth Hardy*
>   Elizabeth Hardy (P37426)
>   Thomas J. Davis (P78626)
>   Attorneys for Defendants
> 280 N. Old Woodward Ave., Suite 400
> Birmingham, MI 48009
> (248) 645-0000
> ehardy@khvpf.com
> tdavis@khvpf.com

Dated: March 11, 2022

---

[1] As indicated in the pretrial order, objections to some of the exhibits are context-dependent, and thus Defendants must reserve objections on those exhibits until trial, when the context of their use (if any) becomes apparent.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

TERESA HARWOOD,

    Plaintiff,                                   Case No. 18-cv-12567

v.                                                    Hon. Paul D. Borman

NORTH AMERICAN BANCARD LLC,          Magistrate Judge
and MARC GARDNER, jointly and severally,   Elizabeth A. Stafford

    Defendants.

---

Jennifer L. Lord (P46912)            Elizabeth P. Hardy (P37426)
Robert W. Palmer (P31704)            Thomas J. Davis (P78626)
Pitt McGehee Palmer                  KIENBAUM HARDY VIVIANO
  & Rivers, PC                       PELTON & FORREST P.L.C.
Attorneys for Plaintiff              Attorneys for Defendants
117 W. Fourth Street, Suite 200      280 N. Old Woodward Ave., Suite 400
Royal Oak, Michigan  48067           Birmingham, MI  48009
jlord@pittlawpc.com                  (248) 645-0000
rpalmer@pittlawpc.com                ehardy@khvpf.com
                                     tdavis@khvpf.com

---

**Defendants' Brief in Support of Motion in Limine Regarding
Pretrial Order Evidentiary Disputes**

## Statement of the Issues Presented

Should the Court exclude Plaintiff's trial exhibits, specified herein, at trial?

# Table of Contents

Statement of the Issues Presented ..................................................................... i

Controlling Authorities .................................................................................. iii

Introduction ................................................................................................... 1

Argument........................................................................................................ 1

I.      The dBusiness article (Exhibit 110) is hearsay and unduly
        prejudicial. ........................................................................................... 1

II.     Harwood likewise seeks to introduce numerous emails that are
        inadmissible hearsay........................................................................... 3

        A.      Harwood's accusations contained in emails are
                inadmissible hearsay............................................................... 4

        B.      Harwood's email complaint to Julia Kellogg is
                inadmissible hearsay............................................................... 6

        C.      The "Yikes" email is inadmissible hearsay and
                speculative. ............................................................................. 7

        D.      Plaintiff's pre-employment handwritten notes are
                inadmissible............................................................................ 9

        E.      Plaintiff's 2014 emails asking her subordinates to "rate"
                her performance are inadmissible as well. ........................... 10

        F.      The email with outside consultant Jewkes is inadmissible................. 11

Conclusion .................................................................................................. 13

## Controlling Authorities

**Cases**

*Almond v. ABB Indus. Sys., Inc.*,
   2001 WL 242548 (S.D. Ohio Mar. 6, 2001) ........................................................2

*Back v. Nestle USA*, Inc.,
   694 F.3d 571 6th Cir. 2012) ..............................................................................9, 10

*Bender v. Hecht's Dep't Stores*,
   455 F.3d 612 (6th Cir. 2006) ..................................................................................10

*Croce v. Sanders*,
   843 F. App'x 710 (6th Cir. 2021) .............................................................................2

*Davis v. Detroit Pub. Sch. Cmty. Dist.*,
   835 F. App'x 18 (6th Cir. 2020) ...............................................................................2

Fed. R. Evid. 803(6)(E) ...............................................................................................11

*Melendez-Diaz v. Massachusetts*,
   557 U.S. 305 (2009) ....................................................................................................1

*Rogers v. Bd. of Cty. Comm'rs of Leavenworth Cty., Kansas*,
   2015 WL 7295448 (D. Kan. Nov. 18, 2015) ...........................................................10

*United States v. Daneshvar*,
   925 F.3d 766 (6th Cir. 2019) ...........................................................................3, 4, 5

*United States v. Gallagher*,
   57 F. App'x 622 (6th Cir. 2003) ...............................................................................2

*United States v. McDaniel*,
   398 F.3d 540 (6th Cir. 2005) .....................................................................................5

*United States v. Santos*,
   201 F.3d 953 (7th Cir. 2000) .....................................................................................7

**Other Authorities**

2 McCormick on Evidence § 188 .............................................................................12

2 McCormick on Evidence § 290 ...........................................................................5, 6

Wright, Miller et al., Fed. Practice & Procedure § 6864 (2021 ed.) .........................6

**Rules**

Fed. R. Evid. 803(6).............................................................................................5, 6

Rule 701 ...................................................................................................................3

## Introduction

One of our nation's most deeply-rooted common law traditions is the preference for live in-court testimony subject to adversarial testing. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 315 (2009). That will be of particular importance in this case, which will largely come down to Defendant Marc Gardner's state of mind. Harwood and Gardner will both be able to testify, live at trial, as to the events in question that led to this lawsuit. But Harwood, through several of her exhibits, seeks to introduce her own self-serving, unsworn out-of-court statements setting forth her subjective opinions of Gardner's conduct as "evidence" in this case. The hearsay rules prevent such a tactic, and the Court should disallow those documents here. If she wants to try and introduce such opinions, she must do so through admissible, in-person testimony subject to cross-examination in front of a jury. The Court should exclude the hearsay documents that Harwood seeks to introduce.

## Argument

## I.   The dBusiness article (Exhibit 110) is hearsay and unduly prejudicial.

Exhibit 110 is a photocopy of a dBusiness newspaper article where, in a single paragraph of a much longer article, the article's author states the following which, presumably, Plaintiff wants the jury to read:

> As good as Harwood is at finding answers, she's recently encountered some communication snags that may stem from her being female. "It's kind of interesting, really," she says. "There are circumstances when,

rather than consult me for items that are in my span of control, my peer group (all male) is consulted instead."

Ex. A. But it is well-established that news articles are hearsay. *See, e.g.*, *Croce v. Sanders*, 843 F. App'x 710, 718 (6th Cir. 2021) (holding article inadmissible to prove statement therein was made); *Davis v. Detroit Pub. Sch. Cmty. Dist.*, 835 F. App'x 18, 22 (6th Cir. 2020) (citing cases). Indeed, the quoted statements attributed to Harwood are double hearsay: the first level being Harwood's alleged out-of-court utterance, and the second level being its repetition by the article's author in the article itself. *See Almond v. ABB Indus. Sys., Inc.*, 2001 WL 242548, at *7 (S.D. Ohio Mar. 6, 2001) (the "admissibility of statements quoted in a newspaper article hinge on two statements—the actual statement and its later repetition by reporters") (citing cases), *aff'd,* 56 F. App'x 672 (6th Cir. 2003).

Harwood will likely retort that she could offer sworn testimony at trial about what she told the magazine's author. This would still be hearsay if offered to prove the truth of her own unsworn prior statement. *See United States v. Gallagher*, 57 F. App'x 622, 627 n.3 (6th Cir. 2003). And even if she could come up with some non-hearsay reason for recounting her own prior statement, that does not solve the second level of hearsay consisting of the unidentified article author's words. In other words, Harwood cannot use the article *itself* as proof that she made the comments therein, because she did not write the article. The unidentified author did, and he or she is not subject to cross-examination. The article is inadmissible for that reason.

-2-

Ultimately, if Harwood wants to offer an opinion in court, she must show that it is "rationally based on" her perception, among other things. *See* Rule 701. That, in turn, will require her to set forth all the factual reasons for that opinion, subject to cross-examination, before a jury. This unsworn, untested, years-old article is a shortcut to putting bare opinion before a jury, and that should not be allowed.

Moreover, the article is irrelevant and more prejudicial than probative under Rules 402 and 403. The quotes attributed to Harwood herself do not accuse anyone of a hostile environment based on gender, and the unidentified author's own words set forth a subjective, equivocal personal opinion about the possible reason behind the commonplace workplace complaint: that "communication snags" with her peers "*may* stem" from her being a woman. But that nuance is likely to be lost on a jury, who will likely believe (with Harwood's prodding) that the article itself is evidence that Harwood was discriminated against. After all, a juror will likely think, why would dBusiness publish it if it wasn't true? That would be highly prejudicial.

## II. Harwood likewise seeks to introduce numerous emails that are inadmissible hearsay.

Harwood also seeks to introduce numerous work emails as exhibits. Emails, of course, are out-of-court statements that are hearsay if offered for the truth of the matter asserted therein. *See United States v. Daneshvar*, 925 F.3d 766, 777 (6th Cir. 2019). And an email is "not a business record for purposes of the relevant hearsay exception simply because it was sent between two employees in a company or

because employees regularly conduct business through emails." *Id.* The exception is "designed for a limited category of records—namely those that are regularly produced as a part of a company's business activities," and thus work emails reflecting mere conversation will likely not qualify. *Id.*

Here, as with the dBusiness article, Harwood's proposed work-email exhibits largely contain her bare, untested, and unsworn opinions as to Marc Gardner's conduct. Again, she is seeking an improper shortcut for introducing her opinion to avoid cross-examination or, at least, to bolster her live testimony by hoping that the jury will believe the truth of the out-of-court statements. This is impermissible. And if the Court does not outright exclude these emails, none should be discussed at trial until and unless she lays a proper foundation for a hearsay exception.

## A.   Harwood's accusations contained in emails are inadmissible hearsay.

The bulk of the emails Harwood seeks to introduce are unsworn statements directly accusing Gardner or Haggerty of wrongdoing. For example:

- Exhibit 122 complains about Gardner deciding not to follow her compensation plan, and instead speaking to Haggerty.

- Exhibit 169 and 176 are portions of an email chain wherein Harwood accuses Gardner of "continual disrespect."

- Exhibit 170 accuses Gardner of not giving her the "same opportunities my peers have."

- Exhibit 172 accuses Gardner of not giving her an "opportunity to be part of" specific conversations.

- Exhibit 173 accuses Gardner of not "keeping her in the loop" on a specific item, and says that it is "demoralizing and frustrating."

- Exhibit 174 complaints to Kirk Haggerty that he spoke to her direct reports without talking to her first.[2]

Absent a hearsay exception, these statements would unquestionably be inadmissible to prove that Gardner or anyone else was treating her inappropriately—they are Plaintiff's own, unsworn, out-of-court statements. *See, e.g., United States v. McDaniel*, 398 F.3d 540, 546 (6th Cir. 2005). And she cannot smuggle these into the record through the business records exception for several reasons.

*First*, all these emails reflect conversation between Harwood and the recipient rather than business records as contemplated by the Sixth Circuit in *Daneshvar*, 925 F.3d at 777. Harwood has not—and could not—claim that the COO's creation of emails containing her personal gripes were part of a "regularly conducted activity of" North American Bancard and that creating such gripe emails was a "regular practice of that activity." *See* Fed. R. Evid. 803(6).

*Second,* and for similar reasons, her complaints reflect her interpretation of why Gardner or Haggerty acted, generally with respect to things she heard about second-hand. These emails are thus also not "made at or near the time by… someone with knowledge." *See, e.g.*, 2 McCormick on Evidence § 290 (exception requires record to be created by "one with personal knowledge of the matter entered.").

---

[2] These emails are collectively attached as Exhibit B.

*Third*, the business record exception does not apply if the opponent can show that "the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6)(E). Under this aspect of the rule, "self-serving narratives of disputed events" of a sort likely to lead to litigation do not qualify for the business-record exception. *See* Wright, Miller et al., Fed. Practice & Procedure § 6864 (2021 ed.). But that, again, is what these emails are: Harwood's own self-serving opinions as to the conduct of others. The documents contain Harwood's hearsay, and they are not admissible.

**B.   Harwood's email complaint to Julia Kellogg is inadmissible hearsay.**

Exhibits 117 and 171 reflect an email chain wherein Harwood told Julia Kellogg that she was being "harassed, bullied, and abused" at work, in response to a request for feedback on firm culture. *See* Ex. C. But even if Kellogg (as the head of HR) was collecting this information pursuant to a business duty such that her own statements are admissible, Harwood's statements embedded in that record remain inadmissible.

All persons contributing to a business record must be acting in the regular course of business for the exception to apply. *See* 2 McCormick*, supra*, § 290. Thus, *both* Harwood's statements and Kellogg's statements must meet the business-record requirements—and, for the reasons stated above, Harwood's self-serving opinions about conduct that she perceived as bullying, written not contemporaneously but

recounting events over the prior year, do not qualify. Those portions of the record were not made at or near the time of the event by someone with personal knowledge.

Moreover, the rationale behind the business records exception is that companies "have incentives to keep accurate records germane to their business," and thus "material contained in those records is more likely to be truthful than the average hearsay." *United States v. Santos*, 201 F.3d 953, 963 (7th Cir. 2000). But that is not the case when the business itself did not create the information; rather, such information is not a business record "unless they are verified by the business and thus adopted and become the business's own statements." *Id.* (holding that it was "clearly incorrect" to admit, under business-record exception, employee complaints made about the Defendant that were recorded, but not verified or adopted by, the business). The very existence of this lawsuit constitutes clear proof that NAB has not "verified" or "adopted" Harwood's claims that she was "abused, harassed, or bullied" at work. Thus, Harwood's statements are not a business record.

## C.    The "Yikes" email is inadmissible hearsay and speculative.

Next, Harwood seeks to introduce Trial Exhibit 182, a December 2014 email chain started by Harwood titled "Yikes" regarding a photo of Gardner taken at a holiday party, to which outside counsel David Greenberg replied "That's what I would call a Jerry Jones moment." Ex. D. It is unclear why Plaintiff insists that this email should be admitted; when NAB challenged the admissibility of the photo itself

in an earlier motion in limine, Harwood all but conceded that her own testimony about what she thought the image reflected would be inadmissible speculation, because she was not there to see what Gardner was doing when the snapshot was made. Rather, she claimed only that the jury should be able to see the photo and draw its own conclusions. ECF No. 50, PageID.1998. Yet now, she seeks to introduce her own speculative opinion, and that of Greenberg, via the email—not to let the jury draw its own conclusion, but instead to suggest that her and Greenberg's out-of-court statements of opinion as to what the photo depicts are true. That is an inadmissible hearsay use, and the document should be excluded.

For one thing, the email is not a business record. It is not a record of regularly conducted business activity, the creation of which was a regular business practice. Nor was it made by someone with first-hand knowledge, near or at the time of the event—Harwood was not there when the photo was taken. *See* ECF No. 29-4, PageID.1234, Pl's Dep. 173. Moreover, at the time, Greenberg was not even an NAB employee—until 2018, NAB was one of his clients as a private attorney, in business-related endeavors (and not discrimination law). *See* ECF No. 29-5, PageID.1635-1640, Greenberg Dep. 9:18-10:13, 13:22-14:15. He was thus not acting under a business duty for NAB either. Rather, the email was essentially office gossip. It does not fall within the hearsay exception.

For the same reasons, Greenberg's statements are not the non-hearsay statements of a party opponent. To qualify, the statement must have been "made by the party's agent or employee on a matter within the scope of that relationship and while it lasted." Fed. R. Evid. 801(d)(2)(D). The applicability of this provision would turn on Greenberg's duties as NAB's agent at the time. *Back v. Nestle USA, Inc.*, 694 F.3d 571, 577 (6th Cir. 2012) (statement about affirmative action "within the scope" of employment for human resource director overseeing affirmative action policies). But here, Greenberg was not NAB's outside counsel for employment discrimination matters or general employment counseling. He was a transactional lawyer who worked on business deals. *See supra*. Harwood's gossiping with Greenberg does not make his response admissible under Rule 801(d)(2)(D).

## D.   Plaintiff's pre-employment handwritten notes are inadmissible.

Harwood Trial Exhibit 180—labelled as "Harwood's interview note" by Harwood in the pretrial order—are handwritten notes labelled "David G 449 pm 9/26/2013" recounting "E & Y" (likely Ernst & Young) "findings" which claim that she is an "all-star of [the] team." Ex. E. This document, on its face, contains *triple* hearsay: (1) Harwood's unsworn writing, (2) recounting what "David G" said about (3) something that an unidentified E&Y person said. Each portion of this document would need to meet a hearsay exception to be admissible—and Harwood will not be able to show any part is admissible, particularly the third level of hearsay where the

speaker is not even identified. *See Back*, 694 F.3d at 578 (holding party could not establish foundation for a hearsay exception when the declarant was unidentified; the contents of the statement itself were not sufficient to lay such a foundation.)

Moreover, the document is not conceivably relevant (and Harwood, for her part, has never explained the alleged relevance.) A third party's opinion of Harwood in *2013*—which does not specify the metrics on which that opinion was formed—is not relevant to proving or disproving whether Harwood was terminated in 2018 for the reasons Gardner stated (*i.e.*, management style clashes and other identified problems). *See, e.g.*, *Rogers v. Bd. of Cty. Comm'rs of Leavenworth Cty., Kansas*, 2015 WL 7295448, at *5 (D. Kan. Nov. 18, 2015) (evidence of prior performance irrelevant where plaintiff was terminated in a reduction in force).

Harwood's only conceivable purpose in introducing this document is to second-guess Gardner's business judgment and to win the "argument" over whose management style was better—something outside the jury's province. *See Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 627–28 (6th Cir. 2006) ("This court does not sit as a 'super personnel department,' overseeing and second guessing employers' business decisions."). It is thus also inadmissible under Rules 402 and 403.

**E.    Plaintiff's 2014 emails asking her subordinates to "rate' her performance are inadmissible as well.**

Next, Harwood seeks to introduce four emails from her subordinates Geoffrey Stocki, David Tepoorten, Scott Fessler, and Rita Feldman (Exhibits 159-162), all

-10-

from 2014, in which the subordinates heap praise on Harwood in response to her solicitation of personal feedback. Ex. F. These emails are inadmissible.

First, they are hearsay and not subject to an exception. Harwood has not claimed—and will not be able to establish—that NAB's regularly-conducted business activity included the Chief Operating Officer soliciting feedback from subordinate employees; rather, C-Suite members were not regularly subject to performance reviews at all. Moreover, given that the emails praising Harwood came from her subordinates with an obvious motive to flatter their boss, the circumstances of preparation here indicate a lack of trustworthiness. *See* Fed. R. Evid. 803(6)(E).

Further, there is no conceivable relevance to these subordinate employees' opinions about Harwood in 2014, when the relevant claim is whether Harwood's *boss*—Gardner—terminated Harwood in 2018 for the reasons he stated. Again, these emails seem intended to "prove" that Harwood's management style was actually good, and that Gardner was thus wrong in his disagreement with Harwood's style. The emails are thus also inadmissible under Rules 402 and 403.

## F.    The email with outside consultant Jewkes is inadmissible.

Harwood also seeks to introduce Trial Exhibit 113, an email from Franklin Covey consultant Gary Jewkes, who she had brought into the company in an effort to change Gardner's management style. Ex. G. This document is, again, hearsay not subject to a business record exception. For the reasons stated above, Harwood could

not show that her portion of this document was a regularly-conducted business activity; rather, the hiring of Jewkes was an unusual event that was not part of NAB's ordinary business. *See* 2 McCormick § 188 ("Unusual records, often outside the expertise assured by a business routine, are properly excluded for that reason.") And Harwood's portion of the document reflects her own opinion as to Gardner's beliefs and actions[3] and is largely based on second-hand information.[4] It was thus not created at the time by someone with personal knowledge. *See supra* at 5.

Further, the entire record is not NAB's; part is written by non-employee Jewkes. There is no indication that NAB "verified" or "adopted" Jewkes' information. And Harwood cannot show that Jewkes' emails are part of Franklin Covey's regularly conducted activity; she does not work for Franklin Covey and is not competent to testify about their business practices, and Jewkes—who could not be located for a deposition subpoena—is unlikely to be a trial witness.

Finally, as before, the only conceivable relevance of this document—which does *not* claim that Gardner was engaged in sexist conduct—is yet another document that Harwood seeks to introduce to "prove" that her management style and not

---

[3] For example, she writes "Marc is still focused on minutia vs big picture and getting his way vs making thoughtful decisions to shape the long term as well as the short term future of the company."

[4]"The week that I was out… Marc caused complete havoc with my team."

Gardner's was the correct one. Again, that is not at issue and would only prejudice and serve to confuse the jury. It is also inadmissible under Rules 402 and 403.

## Conclusion

The Court should grant the motion in limine and exclude the exhibits identified herein.

Respectfully submitted,

By: /s/ *Elizabeth Hardy*
   Elizabeth Hardy (P37426)
   Thomas J. Davis (P78626)
Attorneys for Defendants
280 N. Old Woodward Ave., Suite 400
Birmingham, MI 48009
(248) 645-0000
ehardy@khvpf.com
tdavis@khvpf.com

Dated: March 11, 2022
439813

-13-

## Certificate of Service

I hereby certify that on March 11, 2022, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants.

/s/ *Elizabeth Hardy*
Elizabeth Hardy (P37426)
Kienbaum Hardy Viviano
 Pelton & Forrest, P.L.C.
280 N. Old Woodward Avenue, Suite 400
Birmingham, MI  48009
(248) 645-0000
ehardy@khvpf.com

402892