UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERESA HARWOOD,

                    Plaintiff,                Case No. 18-cv-12567

v.

NORTH AMERICAN BANCARD      Paul D. Borman
LLC and MARC GARDNER,         United States District Judge

                   Defendants.

_____/

**OPINION AND ORDER**
**(1) BIFURCATING THE LIABILITY AND DAMAGES PHASES OF THE**
**TRIAL; AND**
**(2) GRANTING IN PART AND DENYING IN PART DEFENDANTS'**
**MOTION IN LIMINE REGARDING PRETRIAL ORDER EVIDENTIARY**
**DISPUTES (ECF NO. 63)**

Now before the Court, in this employment discrimination case, is Defendants

North American Bancard LLC and Marc Gardner's Motion in Limine Regarding

Pretrial Evidentiary Disputes (ECF No. 63). Defendants contest the admissibility of

several of Plaintiff Teresa Harwood's proposed exhibits listed in the parties' most

recent proposed Joint Final Pretrial Order. The motion has been fully briefed.[1] The

_____

[1] Defendants have also filed a motion in limine regarding Plaintiff's damages claims,
which is fully briefed. (ECF Nos. 57, 60, 62.) Defendants seek an order excluding
portions of Harwood's damages claims and evidence, and an order precluding
Harwood from arguing that over $1 million in cash and securities she received in
connection with her subsequent employment should be disregarded as mitigation if
a jury awards her back pay. Defendants argue that Harwood fails to provide a

Court does not believe that oral argument will aid in its disposition of this motion; therefore, it is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

For the reasons set forth below, the Court will BIFURCATE the liability and damages phases of this trial in this matter. The Court will further GRANT IN PART and DENY IN PART Defendants' motion in limine regarding pretrial evidentiary disputes.

## I.  BACKGROUND

On August 17, 2018, Plaintiff Teresa Harwood filed a Complaint in this Court against Defendants North American Bancard LLC (NAB) and Marc Gardner alleging that the Defendants engaged in discrimination, harassment, and retaliation against her in violation of Title VII of the Civil Rights Act of 1964 (Title VII) and Michigan's Elliott-Larsen Civil Rights Act (ELCRA). (ECF No. 1, Complaint.) Harwood claims that Gardner terminated her from her position as Chief Operating

---

computation showing how she arrived at her claimed back pay damages (seeking $1,000,000 or more per year in back pay) and that she fails to provide either a dollar figure or computation of damages with respect to front pay or other future damages theories. In light of the Court's order here to bifurcate the liability and damages phases of the trial, the Court will defer ruling on Defendants' motion in limine regarding Plaintiff's damages claims pending the jury's resolution of the liability phase of the trial.

Officer (COO) of NAB because of her gender and in retaliation for her complaints about being treated differently because she is a woman. Gardner says that he terminated Harwood because of problems with her direct-report departments, and because he realized that her management style is irreconcilably different than his, deeming Harwood's claims a "business dispute."

The underlying facts in this case are comprehensively set forth in the Court's Opinion and Order granting in part and denying in part Defendants' motion for summary judgment. (ECF No. 40.) In that Opinion and Order, the Court dismissed Harwood's gender discrimination claims under both Title VII and the ELCRA, her Title VII claims against Gardner, and her ELCRA hostile environment claim, but retained Harwood's Title VII hostile environment and retaliation claims against NAB and her ELCRA retaliation claim against both NAB and Gardner. (ECF No. 40.) NAB and Gardner filed a motion for reconsideration of the Court's denial of summary judgment on Harwood's retaliation claims (ECF No. 42), and that motion was denied on July 8, 2020 (ECF No. 51).

Defendants NAB and Gardner previously filed two motions in limine, seeking (1) to prevent Harwood from "arguing or introducing evidence for the purpose of trying to show that she was terminated, or otherwise subject to a materially adverse action, because she [is] a woman," (ECF No. 46, PageID.1900), (2) to prevent

3

Harwood from arguing that Gardner is sexist and that he acted in conformity with that trait at relevant times during Harwood's tenure at NAB, (ECF No. 47, PageID.1911-13), and (3) to exclude several specific pieces of evidence that support the allegedly impermissible propensity inference regarding Gardner's character as sexist, (*id.* at PageID.1913-23). Those motions were granted in part and denied in part on August 31, 2020, and Harwood was precluded from making the following arguments or introducing the following evidence at trial:

- That Harwood's termination, or any other materially adverse employment action, was the result of her gender;

- Harwood may not make the explicit propensity argument that Gardner's conduct, such as excluding her from business meetings, was based on sex because Gardner was acting in accordance with his character as a sexist;

- Harwood may not identify the speaker of the comment about a specific rock formation as Gardner's cousin; and

- Harwood may not offer any of the following hearsay testimony:

  o That Ashley Fisher told Harwood that Gardner and other NAB employees took Fisher to a strip club after the 2014 Holiday Party;

  o That an unidentified male executive told Harwood that Gardner tried to get him to go to a strip club in Vegas; and

  o That certain clients told Harwood that they left the April 2014 NAB event at the trade show in Las Vegas early because the presenters' outfits violated the clients' company's code of conduct.

(ECF No. 55, PageID.2115-16.)

This Court held a Final Pretrial Conference with the parties on September 1, 2020, and the matter was continued to permit the parties to facilitate in November 2020. This case did not settle at facilitation.

## II.  BIFURCATION OF TRIAL

The Court first addresses the issue of whether the it should bifurcate the liability and damages phases of the trial in this case.

The United States Court of Appeals for the Sixth Circuit has explained the proper analysis for ordering bifurcation of a trial under Federal Rule of Civil Procedure 42(b):

> A court may bifurcate a trial "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." In determining whether separate trial are appropriate, the court should consider several facts, including "the potential prejudice to the parties, the possible confusion of the jurors, and the resulting convenience and economy."

*Wilson v. Morgan*, 477 F.3d 326, 339 (6th Cir. 2007) (internal citations omitted). If even one of the above criteria is satisfied, bifurcation may be warranted. *See Saxion v. Titan-C Mfg., Inc.*, 86 F.3d 553, 556 (6th Cir. 1996). The decision to bifurcate a trial is within the court's discretion and can be made upon the court's own motion. *Id*. "[M]any courts have upheld cases bifurcated between liability and damages because the evidence pertinent to the two issues is wholly unrelated, and as a logical

5

matter, liability must be resolved before the question of damages." *In re Bendectin Litig.*, 857 F.2d 290, 309 (6th Cir. 1988).

The Court finds that judicial economy would be best served in this case by bifurcation of the liability and damages phases of the trial. This will allow the jury to first hear and determine Defendants NAB's and Gardner's liability with regard to Harwood's remaining Title VII and ELCRA employment discrimination claims. The issues regarding Harwood's damages, including her claims for back pay and front pay, are not relevant in determining liability and therefore could conflate the issues, confuse the jury, and result in prejudice. Therefore, the balance of the factors weigh in favor of bifurcation.

Consequently, the Court will exercise its discretion and bifurcate this trial. When the jury trial commences, the jury will first determine the issue of liability on Harwood's remaining employment discrimination claims. If the jury returns a verdict in favor of Harwood on any of her claims, then the second phase of the trial to determine damages will immediately commence and utilize the same jury.

## III.  MOTION IN LIMINE

### A.    Legal Standard

District courts have broad discretion over matters involving the admissibility of evidence at trial. *United States v. Seago*, 930 F.2d 482, 494 (6th Cir. 1991).

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984); *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999) ("The Federal Rules of Evidence, the Federal Rules of Criminal and Civil Procedure and interpretive rulings of the Supreme Court and this court all encourage, and in some cases require, parties and the court to utilize extensive pretrial procedures – including motions *in limine* – in order to narrow the issues remaining for trial and to minimize disruptions at trial.").

"A motion in limine is a request for guidance by the court regarding an evidentiary question." *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983). It is a procedural vehicle "to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013). "[A] preliminary ruling allows the parties to consider the court's ruling in formulating their trial strategy." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994). Motions *in limine* may promote "evenhanded and expeditious management of trials by eliminating evidence that is clearly inadmissible for any purpose." *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio

2004) (citing *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)).

"Irrelevant evidence is not admissible." Fed. R. Evid. 402. "The rules regarding relevancy, however, are quite liberal[.]" *Robinson v. Runyon*, 149 F.3d 507, 512 (6th Cir. 1998). Under the Federal Rules of Evidence, "[e]vidence is relevant ... if it has *any* tendency to make a fact more or less probable than it would be without the evidence; and ... the fact is of consequence in determining the action." Fed. R. Evid. 401 (emphasis added). The court is not "permitted to consider the weight or sufficiency of the evidence in determining relevancy and 'even if [it] believes the evidence is insufficient to prove the ultimate point for which it is offered, it may not exclude the evidence if it has even the slightest probative worth.'" *Robinson*, 149 F.3d at 512 (quoting *Douglass v. Eaton Corp.*, 956 F.2d 1339, 1344 (6th Cir. 1992)).

Relevant evidence may be excluded, however, "if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Evidence is inadmissible "if there is a danger of *unfair* prejudice, not mere prejudice." *Robinson*, 149 F.3d at 514-15 (emphasis in original) (citing Fed. R. Evid. 403). The court has "very broad discretion in making this

8

determination." *United States v. LaVictor*, 848 F.3d 428, 444 (6th Cir. 2017) (quoting *United States v. Semrau*, 693 F.3d 510, 523 (6th Cir. 2012)).

## B. Defendants' Motion in Limine Regarding Pretrial Order Evidentiary Disputes (ECF No. 63)

On March 11, 2022, Defendants filed a Motion in Limine Regarding Pretrial Order Evidentiary Disputes, seeking a ruling in limine to exclude several of Harwood's proposed trial exhibits. (ECF No. 63, Defs.' MIL Evidence.) Defendants object that Harwood's proposed Exhibit 110, a copy of a dBusiness newspaper article, should be excluded as hearsay, and because it is irrelevant and unduly prejudicial, and that a number of work emails and a handwritten note that Harwood seeks to introduce as exhibits should be excluded as irrelevant, inadmissible hearsay, and because they are not subject to the business record exception to the hearsay rule.

The Court will address each of Defendants' objections in turn.

### 1. dBusiness article (proposed Exhibit 110)

Harwood's proposed Exhibit 110 is a photocopy of an August 9, 2017 dBusiness newspaper article titled "2017 Powered by Women," that profiled "eight professional women who are driving growth in Michigan, the nation, and the world." (ECF No. 63-2, Article, PageID.2362-65.) Harwood was one of the eight women who agreed to be profiled in the article. Defendants state that they anticipate that

9

Harwood will want the jury to read the following paragraph in the article, which includes a quote attributed to Harwood:

> As good as Harwood is at finding answers, she's recently encountered some communication snags that may stem from her being female. "It's kind of interesting, really," she says. "There are circumstances when rather than consult me for items that are in my span of control, my peer group (all male) is consulted instead."

(*Id.* PageID.2365.)

### a.     Hearsay

Defendants first argue that this article should be excluded because it is hearsay, and that the quoted statements attributed to Harwood within the article are double hearsay – the actual statement and its later repetition by the article's author. (ECF No. 63, Defs.' Mot., PageID.2348.) "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Hearsay is not admissible except as provided by federal statute, by the Rules of Evidence, or by other rules prescribed by the Supreme Court. Fed. R. Evid. 802. To determine if a statement constitutes inadmissible hearsay, facts must be presented regarding the purpose for which the statement will be introduced and the identity of the declarant. If a statement is introduced for a purpose other than the truth of the matter asserted, the statement is not hearsay. *See* Fed. R. Evid. 801(c). Similarly, if a statement was

10

made by a party-opponent and is offered against that party, the statement is not hearsay. *See* Fed. R. Evid. 801(d). Finally, even if a statement constitutes hearsay, there is a long list of exceptions to the rule rendering hearsay admissible. *See* Fed. R. Evid. 803, 804, 807.

It is well established that, if offered for the truth of the matter asserted, news articles are inadmissible hearsay. *See Croce v. Sanders*, 843 F. App'x 710, 718 (6th Cir. 2021) (news article inadmissible hearsay); *Davis v. Detroit Pub. Schs. Cmty. Dist.*, 835 F. App'x 18, 22 (6th Cir. 2020) (newspaper articles constitute inadmissible hearsay); *Park W. Galleries, Inc. v. Global Fine Art Registry, LLC*, No. 08-12247, 2010 WL 987772, at *3 (E.D. Mich. Mar. 12, 2010) (same). Thus, the dBusiness article, if offered for the truth of the matters asserted therein, is hearsay and inadmissible at trial. And as Defendants further state, Harwood cannot use the article as proof that she made the comments stated therein to the author, because she did not write the article, and the article's author is not subject to cross-examination.

Harwood does not dispute that the dBusiness article is inadmissible if offered to show the truth of the matters asserted therein. Accordingly, Defendants' motion in limine is granted and the dBusiness article is excluded to the extent the dBusiness article is offered into evidence to prove the truth of the matters asserted.

Although Harwood may not introduce the article to prove the truth of the matters asserted therein, she argues that the article can be introduced for a non-hearsay purpose, such as to prove notice, damages, or that a controversy existed. Harwood states that she wants to introduce the dBusiness article into evidence, not for the truth of the matters asserted therein, but to show that she engaged in protected activity by complaining about gender-based discriminatory conduct. (ECF No. 64, Pl.'s Resp., PageID.2435-36.) Harwood notes that, in this Court's Opinion and Order on Defendants' motion for summary judgment, the Court stated, in finding that Harwood established that she had engaged in protected activity, that "Harwood opposed what she perceived as unlawful gender discrimination when she told the author of the dBusiness article that she was being treated differently because she is a woman…." (ECF No. 40, Opinion and Order, PageID.1828.)

The Court agrees, consistent with its ruling on summary judgment, that the dBusiness article would not be inadmissible if offered for the non-hearsay purpose of showing that Harwood complained that she is treated differently because she is a woman, and that Defendants had knowledge of that complaint in the article. *See Logan v. B H 92 Trucking, Inc.*, No. 19-cv-1875, 2022 WL 198806, at *6 (N.D. Ill. Jan. 21, 2022) (collecting cases stating that complaints are not hearsay when used to show that complaint was made and defendant received it, but not to show that the

complained-of conduct was true); *Rivera v. Incorporated Village of Farmingdale*, 29 F. Supp. 3d 121, 129-30 (E.D.N.Y. 2013) (finding that the district court judge's reliance on newspaper articles at the summary judgment stage "to show that the comments contained therein suggested a 'climate of extreme public anti-Hispanic sentiment,'" "rebuts any argument that [the articles] are only inadmissible hearsay"); *Rosioreanu v. City of New York*, No. 07 CV 2925(LB), 2012 WL 666789, at *3 (E.D.N.Y. Feb. 29, 2012) (allowing exhibits "for the non-hearsay purpose of proving that [plaintiff] complained about [] harassment and defendant knew about these complaints").

### b.   Undue prejudice

Defendants further argue in their motion in limine that, even if there is a non-hearsay use for the dBusiness article, the article itself nevertheless should be excluded for the additional reason that it is irrelevant and more unduly prejudicial than probative under Fed. R. Evid. 402 and 403. Defendants acknowledge, in their reply brief, that Harwood can testify at trial that she made the statement quoted in the article, that the complaint was of gender discrimination, and that she discussed the article/complaint with persons at NAB. Defendants state that the existence of the article is not in dispute, and they argue that the article itself is therefore unnecessary and cumulative and adds little if anything beyond Harwood's testimony.

13

Harwood does not respond to this prejudice argument, and thus arguably waives any opposition to it. *See Sault St. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1988) (failure to address an issue constitutes a waiver or abandonment of the argument); *see also Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012) (issues raised in a perfunctory manner are deemed waived).

"Regardless of the reason for which … the evidence [is] being offered, the prejudice inquiry asks whether 'the jury [was] likely to consider the statement for the truth of what was stated with significant resultant prejudice.'" *United States v. Adams*, 722 F.3d 788, 831 (6th Cir. 2013). Defendants contend that the jury will likely believe that the "ostensibly neutral" author's out-of-court statements in the article itself – that "communication snags" with Harwood's peers "*may* stem" from her being a woman – is evidence that Harwood was discriminated against because she is a woman, thinking that dBusiness would not publish the article if it was not true.

The Court agrees that, on balance, the risk of unfair prejudice that the jury will believe that the article is evidence that Harwood was discriminated against outweighs any relevance of the article. *See Adams*, 722 F.3d at 830-31 (excluding state-election records where non-hearsay use was relevant to corroborate testimony and provide notice of reports of vote-buying, but where jury was "likely to consider

14

the statement for the truth of what was asserted"). Harwood's apparent quote in the article is "There are circumstances when, rather than consult me for items that are in my span of control, my peer group [] is consulted instead." (ECF No. 63-2, PageID.2365.) This quote is facially gender-neutral. It is not clear who inserted the parenthetical text within the quote – "(all male)" – but it is clear that it was the article's author who made the immediately preceding statement in the article that Harwood "recently encountered some communication snags that may stem from her being female." (*See id.*) The jury is likely to believe the "ostensibly neutral" author's published speculation that Harwood's complaints about "communication snags" with her "all male" peers "may stem" from her being a woman. Thus, the Court finds that the dBusiness article is more prejudicial than probative under Fed. R. Evid. 402 and 403.

In making this determination, the Court notes that Harwood will not be precluded from testifying that she made the statement in the article and discussed the article with NAB, to establish notice of her complaint. *See United States v. Meriweather*, 78 F.3d 1070, 1077 (6th Cir. 1996) ("One factor in balancing unfair prejudice against probative value under Rule 403 is the availability of other means of proof."). Indeed, such testimony would be required in any event to establish notice

15

to Defendants, because the existence of the article alone does not establish such notice.

Therefore, the Court finds that the dBusiness article should be excluded as an exhibit at trial because: (1) to the extent it is offered for the truth of the matters stated therein, it contains inadmissible hearsay statements by Harwood and the article's author; and (2) to the extent it is offered for a non-hearsay purpose, it is more unduly prejudicial than probative, and unnecessary and cumulative. However, Harwood will be permitted to testify at trial that she made the statements to the article's author, and that she discussed the article with others at NAB, to establish notice and that she engaged in protected activity, and Defendants may not dispute the existence of the article.

**2.    Emails and handwritten note (proposed Exhibits 113, 117, 122, 159-62, 169, 170, 171-74, 176, 180, 182)**

Defendants next assert that Harwood seeks to introduce a number of work emails and a handwritten note as exhibits. Defendants generally argue that these emails and handwritten note are inadmissible hearsay, not subject to any relevant hearsay exception, including the business record exception. Defendants contend that Harwood seeks to introduce the emails and handwritten note to introduce her opinion, or at least to bolster her live testimony.

16

Harwood responds generally that she does not contend the work emails or her handwritten note qualify as business records, and while those proposed exhibits may be hearsay, she argues that she is entitled to introduce the emails for reasons other than the truth of the matters asserted therein. She further contends that any ruling on the admissibility of these emails and note is premature, as the documents must be viewed in the context of the trial proceedings, at which time she can lay a foundation and demonstrate the relevancy and admissibility of the exhibits.

Defendants specifically object to the following Exhibits.

> **a.    Emails containing Harwood's accusations against Marc Gardner and Kirk Haggarty (proposed Exhibits 122, 169, 170, 172-74, 176)**

Defendants argue that that the emails in Harwood's proposed Exhibits 122, 169, 170, 172-74, and 176 contain Harwood's accusations of wrongdoing against Defendant Marc Gardner and Kirk Haggarty, Chief Financial Officer at NAB. Specifically, Defendants contend:

- Exhibit 122 - Harwood complains about Gardner deciding not to follow her compensation plan, and instead speaking to Kirk Haggarty "to propose a financial solution."

- Exhibit 169 and 176: portions of an email chain wherein Harwood accuses Gardner of "continual disrespect."

- Exhibit 170: Harwood accuses Gardner of not giving her the "same opportunities my peers have."

- Exhibit 172: Harwood accuses Gardner of not giving her an "opportunity to be part of" specific conversations.

- Exhibit 173: Harwood accuses Gardner of not "keeping her in the loop" on a specific item, and says that it is "demoralizing and frustrating."

- Exhibit 174: Harwood complains to Kirk Haggarty about speaking to her direct reports without talking to her first.

(ECF No. 63, Defs.' Mot., PageID.2350-51; ECF No. 63-3, Exhibit B, Emails, PageID.2366-77.) Defendants argue that these emails are inadmissible hearsay because they contain Harwood's own, unsworn, out-of-court statements, and that the emails are not subject to any hearsay exception, such as the business records exception.

Harwood generally responds that she does not intend to argue that the emails in the proposed Exhibits are business records, and she concedes that her own statements in those emails are hearsay. (ECF No. 64, Pl.'s Resp., PageID.2436-37.) She argues instead, with respect to the emails contained in Exhibit B to Defendants' motion in limine, that the responsive statements in those emails by Gardner "or other members of the executive team are not hearsay as they are statement[s] of an opposing party," and that those statements are therefore admissible pursuant to Fed. R. Evid. 801(d). (*Id.* PageID.2437.) Harwood contends that the statements could be used for impeachment or some other purpose at trial.

18

Harwood's statements in the emails in Exhibit B to Defendants' motion in limine are out-of-court statements and therefore inadmissible hearsay if offered for the truth of the matters asserted therein. Harwood concedes as much and does not contend that her statements in the emails at issue are subject to an exception to the hearsay rule or that her statements are otherwise offered for a non-hearsay purpose. Accordingly, at this time, the Court GRANTS Defendants' motion in part and EXCLUDES the emails in Harwood's proposed Exhibits 122, 169, 170, 172-174, and 176 that contain Harwood's statements. She may not use these out-of-court statements to bolster her testimony at trial.

However, admissions by party-opponents do not constitute hearsay. Fed. R. Evid. 801(d)(2) (excluding as hearsay statements "by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship."). To the extent the emails contained in Exhibit B to Defendants' motion in limine contain statements from Defendant Gardner or another member of the NAB executive team within the scope of and during their employment with NAB, and the statement is offered by Harwood against that opposing party, Defendants' motion in limine as to these emails is denied in part and those limited portions of the emails, that contain admissions by a party opponent, are not excluded on the basis of hearsay. The Court will determine the admissibility of those limited

19

portions of the email chains, as admissions of a party-opponent, if and when those issues are raised at trial.

But, the admission of Gardner's or another executive team member's limited portions of the email chains at trial will not render the remainder of the email chain – and specifically Harwood's inadmissible hearsay portions of the emails – admissible by Harwood. The "Rule of Completeness," codified in Fed. R. Evid. 106, provides that "[i]f a party introduces all or part of a writing or recorded statement, an *adverse party* may require the introduction, at that time, of any other part – or any other writing or recorded statement – that in fairness ought to be considered at the same time." This rule is intended to eliminate the misleading impression created by taking a statement out of context, but "it is not designed to make something admissible that should be excluded." *See United States v. Costner*, 684 F.2d 370, 373 (6th Cir. 1982); *see also Polk v. Yellow Freight Sys., Inc.*, 876 F.2d 527, 532 (6th Cir. 1989) (stating Rule 106 does not allow the use of otherwise inadmissible evidence for completeness "just because part of a document may be utilizable for impeachment purposes"). Thus, the "Rule of Completeness" does not permit Harwood to introduce parts of those email chains as admissions of party opponents and then seek to introduce her own statements in the email chains under Rule 106.

### b.   Harwood's email complaint to Julia Kellogg (proposed Exhibits 117 and 171)

Defendants state that Harwood's proposed Exhibits 117 and 171 are a December 8, 2017 email chain wherein Harwood told Julia Kellogg, Executive Vice President, Human Resources at NAB, that she was being "harassed, bullied, and abused" at work, in response to a request by Kellogg for feedback on firm culture. (ECF No. 63, Defs.' Mot., PageID.2352; ECF No. 63-4, Exhibit C, PageID.2378-86.) Defendants argue that Harwood's statements in that email chain are inadmissible hearsay, and that they do not qualify as business records.

Harwood does not specifically respond to Defendants' motion with respect to these two proposed Exhibits. As discussed above, Harwood broadly responds that a ruling on the emails in general would be premature and that she should be given an opportunity to demonstrate relevancy and admissibility.

The Court finds that Harwood has waived her challenge to the exclusion of these Exhibits. *See Sault St. Marie Tribe of Chippewa Indians*, 146 F.3d at 374 (failure to address an issue constitutes a waiver or abandonment of the argument); *see also Clemente*, 679 F.3d at 497 (issues raised in a perfunctory manner are deemed waived). "When a party responds to a motion to exclude evidence, the party must not only make an offer of proof to preserve the issue for appeal, but must also

21

indicate why the evidence is admissible." *See Barner v. Pilkington North America, Inc.*, 399 F.3d 745, 749 (6th Cir. 2004) (citing Fed. R. Evid. 103(a) (providing that an appeal based on the exclusion of evidence cannot be preserved unless "the substance of the evidence was made known to the [lower] court by offer or was apparent from the context within which questions were asked"); *Angel v. United States*, 775 F.2d 132, 146 (6th Cir. 1985) ("To preserve error in a ruling on evidence[,] a party must notify the trial court of his position and the specific rule of evidence on which he relies.") (quotation marks omitted)).

The Court further concludes, as with the emails in Exhibit B to Defendants' motion discussed above, that the limited emails at issue with Julia Kellogg (Harwood's proposed Exhibits 117 and 171) are inadmissible hearsay. To the extent Harwood seeks to introduce limited portions of those emails as admissions by a party opponent, the Court will determine the admissibility of those limited portions of the emails, as admissions of a party-opponent, if and when those issues are raised at trial. Harwood is not permitted to introduce her own statements in the email chains under Rule 106 in an attempt to bolster her testimony.

### c.    The "Yikes" email (proposed Exhibit 182)

Defendants state that Harwood's proposed Exhibit 182 is a December 15, 2014 email chain initiated by Harwood titled "Yikes" regarding a photo of Gardner

22

taken at a holiday party, to which outside counsel David Greenberg replied, "That's what I call a Jerry Jones moment." (ECF No. 63-5, Exhibit D, PageID.2387.) Defendants argue that the email chain consists of Harwood's and Greenberg's out-of-court statements of opinion as to what the photograph depicts, which statements are inadmissible hearsay and thus should be excluded. (ECF No. 63, Defs.' Mot., PageID.2353-55.) Defendants contend that the email chain is not a business record, but essentially just office gossip. They state that Harwood was not even present at the holiday party when the photo was taken, and Greenberg (then NAB's outside counsel for transactional matters, not employment matters) was not a NAB employee at that time (he only became an NAB employee years later, in 2018), and thus his statements are not the non-hearsay statements of a party-opponent.

Harwood argues in Response that, as counsel to NAB, Greenberg was an agent of NAB and his comment in the email is an admission of a party opponent, under Rule 801(d). Harwood alternatively argues that Greenberg's statement in the email is admissible as a present sense impression under Fed. R. Evid. 803(1), claiming that Greenberg made the statement about the photo immediately after seeing it.

In this Court's August 31, 2020 Opinion and Order on Defendants' motion in limine regarding the admissibility of the 2014 Holiday Party Photo, the Court held that "Harwood may testify as to her opinion about what the photo depicts and why

23

she found it inappropriate so long as it is 'rationally based on [her] perception' of the photo at the time she saw it on NAB's intranet. Fed. R. Evid. 701." (ECF No. 55, Opinion and Order, PageID.2105.) The Court further held that "the photo is sufficiently probative to outweigh any danger of unfair prejudice against Gardner." (*Id.*) The Court ruled, however, to prevent a propensity argument by Harwood that all of Gardner's conduct stems from his character as sexist, Harwood may not show the photo during her opening statement and in her closing argument. (*Id.* PageID.2107 fn. 1.)

Federal Rule of Evidence 801(d)(2) provides in part that a statement is not hearsay if "[t]he statement is offered against an opposing party and … (C) was made by a person whom the party authorized to make a statement on the subject; [or] (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed[.]" "It is the general rule that 'statements made by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney.'" *Williams v. Union Carbide Corp.*, 790 F.2d 552, 555 (6th Cir. 1986) (citation omitted).

Here Defendants do not dispute that Greenberg was NAB's attorney for transactional matters/business deals at the time of the December 2014 email, but they contend that he was not retained for employment discrimination matters or

24

general employment counseling and he therefore was not acting under a business duty to NAB when he responded to Harwood's "Yikes" email. Rather, Defendants characterize the email as "office gossip," and argue that Harwood fails to meet her burden to establish that the email statement falls within an exclusion to the hearsay rule.

The Court finds that Harwood must establish that her email communication with Greenberg was related to Greenberg's representation of Defendants, as opposed to "office gossip" between the two, before Greenburg's responsive email can be deemed a communication by a "party opponent" under Rule 801(d)(2). Harwood relies on *United States v. Amato*, 356 F.3d 216, 220 (2d Cir. 1984), for supporting her argument that Greenberg's statement in the email constitutes a party admission under Rule 801(d)(2). However *Amato* is distinguishable, as that case involved a statement in a letter by the individual defendant's former attorney, specifically regarding the attorney's representation of the defendant, and thus was clearly a statement made "concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Whereas here, the statement at issue was made by NAB's outside counsel for transactional matters, who generally worked on business deals for NAB, and the email statement does not appear at this time to specifically concern the scope of that representation.

25

Harwood  alternatively argues that Greenberg's statement is admissible as a present sense impression under Fed. R. Evid. 803(1), because, she contends, Greenberg made that statement about the photo immediately after seeing it. Rule 803(1) provides that "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it" is not excluded by the rule against hearsay. However, Greenberg's statement, "That's what I would call a Jerry Jones moment," does not "describ[e] or explain[]" the photograph, but rather states his opinion of the photograph. In addition, according to the email chain, Harwood sent the photo to Greenberg at 11:11 a.m., and he responded approximately 36 minutes later, at 11:47 a.m. It is not clear from the timing of the email chain when Greenberg first saw the photo, or if he made the statement "while or immediately after" he saw the photo. *See* Fed. R. Evid. 803(1) advisory committee's note (under Rule 803(1) "in many, if not most, instances precise contemporaneity is not possible and hence a slight lapse [of time] is allowable."). *Compare United States v. Davis*, 577 F.3d 660, 668 (6th Cir. 2009) (statement made "within 30 seconds to a minute" meets the definition of "present sense impression"); *United States v. Parker*, 936 F.2d 950, 954 (7th Cir. 1991) (holding that statements made about an event after walking approximately 100 feet or so qualified as a present sense impression); *United States v. Blakey*, 607 F.2d 779, 785-80 (7th Cir. 1979) (holding statement

26

made "between minutes and 23 minutes" after it was observed was admissible as a present sense impression, noting that "substantial circumstantial evidence" corroborated the accuracy of the statements), *overruled in part on other grounds*, *Idaho v. Wright*, 497 U.S. 805 (1990); *with Hilyear v. Howat Concrete Co.*, 578 F.2d 422 (D.C. Cir. 1978) (statement made between 15 and 45 minutes after an accident could not qualify an admission under the present sense impression exception); *United States v. Rosetta*, 127 F.3d 1110 (Table), 1997 WL 651027, at *2 (10th Cir. Oct. 20, 1997) (stating that "a delay of minutes or hours between an event and a statement bars resort to 803(1)").

Without any evidence at this time about the amount of time between when Harwood sent the email, when Greenberg saw the photo, and when he responded by email to Harwood, the Court will GRANT Defendants' motion and decline to admit the email under Rule 803(1) at this time, without prejudice to the parties laying a proper foundation for admission of the email at trial, at sidebar and prior to testimony regarding this email before the jury. *See Burrows v. General Motors Corp.*, 1993 WL 243780, at *4 (6th Cir. 1993) (affirming exclusion of statements when plaintiff failed to establish that the statements were made "immediately" after the declarant perceived the condition he related).

27

Accordingly, Harwood's proposed Exhibit 182 is excluded as hearsay unless Harwood can establish during the trial, at sidebar and prior to testimony regarding this email before the jury, that the email communication is related to and within the scope of outside counsel Greenberg's representation of Defendants, and thus constitutes an admission by a party opponent, and/or Harwood can establish at trial, at sidebar and prior to testimony regarding this email before the jury, that Greenberg made the statement in the email chain "immediately" after seeing the photo.

### d. Harwood's handwritten interview note (proposed Exhibit 180)

Defendants state that Harwood's proposed Exhibit 180, which is labelled as "Harwood's interview note" by Harwood in the pretrial order, are handwritten notes made by Harwood labelled "David G 449 pm 9/26/2013" and stating "Follow Up," "E&Y [presumably Ernst & Young] findings," and "considers me all-star of [the] team." (ECF No. 63-6, Exhibit E, PageID.2388.) Defendants argue that this documents contains triple hearsay: (1) Harwood's unsworn handwriting; (2) recounting what "David G" said about (3) something that an unidentified E&Y person said – that Harwood is an "all-star of [the] team." (ECF No. 63, Defs.' Mot., PageID.2355.) For triple hearsay to be admissible, each separate statement must either be excluded from the hearsay definition or fall within a hearsay exception.

28

*Back v. Nestle USA, Inc.*, 694 F.3d 571, 578 (6th Cir. 2012) (citing *United States v. Gibson*, 409 F.3d 325, 337 (6th Cir. 2005); Fed. R. Evid. 805 ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule.")). Defendants argue that Harwood will not be able to show that any part of the exhibit is admissible, and particularly the third level of hearsay, because the alleged "E&Y" speaker is not identified. (ECF No. 63, Defs.' Mot., PageID.2355, citing *Carden v. Westinghouse Elec. Corp.*, 850 F.2d 996, 1002-03 (3d Cir. 1988) (holding in a double-hearsay case that the statement from the unidentified declarant did not fit within Rule 801(d)(2)(D) because there was no evidence establishing that the statement made by the unidentified individuals ("they") concerned a matter within the scope of their employment)).

Defendants further argue that Exhibit 180 is inadmissible under Rules 402 and 403 because it is not relevant. Defendants assert that an unidentified third party's opinion of Harwood in 2013 is not relevant for proving or disproving whether Harwood was terminated in 2018 for the reasons Gardner stated. (ECF No. 63, Defs.' Mot., PageID.2356.) Defendants contend that Harwood's only purpose in introducing this document is to second-guess Gardner's business judgment "and to win the 'argument' over whose management style was better – something outside

29

the jury's province." (*Id.* citing *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 627-28 (6th Cir. 2006) ("This court does not sit as a 'super personnel department,' overseeing and second guessing employers' business decisions.").)

In her Response brief, Harwood argues only that rulings on "the admissibility" of this exhibit "should be deferred until trial when Plaintiff has an opportunity to lay a foundation for [its] admission based on the context of the ongoing trial proceedings." (ECF No. 64, Pl.'s Resp., PageID.2439.)

Defendants argue in their reply brief that Harwood has waived her response to the motion in limine regarding this document. (ECF No. 66, Defs.' Reply, PageID.2450.)

The Court finds that Harwood has waived her challenge to the exclusion of proposed Exhibit 180 on the grounds stated in Defendants' motion (hearsay and relevancy). *See Sault St. Marie Tribe of Chippewa Indians*, 146 F.3d at 374 (failure to address an issue constitutes a waiver or abandonment of the argument); *see also Clemente*, 679 F.3d at 497 (issues raised in a perfunctory manner are deemed waived). She does not dispute that her handwritten notes are hearsay (and in fact contain multiple levels of hearsay), and does not explain how this exhibit – cryptic handwritten notes dated in 2013 – is at all relevant for proving or disproving whether Harwood was terminated in 2018 for the reasons Gardner stated. "When a party

30

responds to a motion to exclude evidence, the party must not only make an offer of proof to preserve the issue for appeal, but must also indicate why the evidence is admissible." *See Barner*, 399 F.3d at 749 (citing Fed. R. Evid. 103(a) (providing that an appeal based on the exclusion of evidence cannot be preserved unless "the substance of the evidence was made known to the [lower] court by offer or was apparent from the context within which questions were asked"); *Angel*, 775 F.2d at 146 ("To preserve error in a ruling on evidence[,] a party must notify the trial court of his position and the specific rule of evidence on which he relies.") (quotation marks omitted)).

The Court therefore grants Defendants' motion in limine as to Harwood's proposed Exhibit 180 and excludes this exhibit because it contains inadmissible hearsay, it is irrelevant, and Harwood waived her challenge to the exclusion of this proposed Exhibit.

> **e.   Harwood's 2014 emails asking subordinates to rate her performance (proposed Exhibits 159-162)**

Defendants state that Harwood seeks to introduce four emails from her subordinates – Geoffrey Stocki, David Tepoorten, Scott Fessler, and Rita Feldman – from 2014 (proposed Exhibits 159-162) in which the subordinates praised Harwood, in response to her solicitation of personal feedback from them. (ECF No.

31

63-7, Exhibit F, PageID.2389-93.) Defendants argue that these emails are inadmissible hearsay and not subject to an exception, and that they are not relevant to the claims at issue for trial – whether Gardner terminated Harwood in 2018 for the reasons he stated. (ECF No. 63, Defs.' Mot., PageID.2356-57.)

As above, in response, Harwood argues only generally that rulings on "the admissibility" of these exhibits "should be deferred until trial when Plaintiff has an opportunity to lay a foundation for their admission based on the context of the ongoing trial proceedings." (ECF No. 64, Pl.'s Resp., PageID.2439.)

Defendants argue in their reply brief that Harwood has waived her response to the motion in limine regarding these proposed exhibits. (ECF No. 66, Defs.' Reply, PageID.2450.)

The Court finds that Harwood has waived her challenge to the exclusion of proposed Exhibits 159-162 on the basis of hearsay and relevancy. *See Sault St. Marie Tribe of Chippewa Indians*, 146 F.3d at 374 (failure to address an issue constitutes a waiver or abandonment of the argument); *see also Clemente*, 679 F.3d at 497 (issues raised in a perfunctory manner are deemed waived). She does not dispute that these emails are hearsay, or explain how these exhibits are relevant regarding whether she was terminated in 2018 for the reasons Gardner stated. "When a party responds to a motion to exclude evidence, the party must not only make an offer of proof to

32

preserve the issue for appeal, but must also indicate why the evidence is admissible." *See Barner*, 399 F.3d at 749 (citing Fed. R. Evid. 103(a) (providing that an appeal based on the exclusion of evidence cannot be preserved unless "the substance of the evidence was made known to the [lower] court by offer or was apparent from the context within which questions were asked"); *Angel*, 775 F.2d at 146 ("To preserve error in a ruling on evidence[,] a party must notify the trial court of his position and the specific rule of evidence on which he relies.") (quotation marks omitted)).

The Court grants Defendants' motion in limine to exclude Harwood's proposed Exhibits 159-162, Harwood emails asking her subordinates to rate her performance, because they contain inadmissible hearsay, are irrelevant to the issues in this case, and Harwood waived her challenge to the exclusion of these exhibits. To the extent Harwood seeks to introduce limited portions of those emails on some other basis, the Court will determine the admissibility of the limited portions of the proposed exhibits if and when those issues are raised at trial. Harwood is not permitted to introduce her own statements in the emails under Rule 106 in an attempt to bolster her testimony.

> **f.    Harwood email chain with Gary Jewkes (proposed Exhibit 113)**

Defendants state that Harwood seeks to introduce a March 2016 email chain between her and Gary Jewkes, a Franklin Covey consultant who she had brought into NAB in an effort to change Gardner's management style. (ECF No. 63-8, Exhibit G, PageID.2394-98.) Defendants argue that this email chain is hearsay and not subject to a business record exception, and that it is irrelevant to the issues to be decided in this case. (ECF No. 63, Defs.' Mot., PageID.2357-59.)

Again, in response, Harwood argues broadly only that a ruling on "the admissibility" of this exhibit "should be deferred until trial when Plaintiff has an opportunity to lay a foundation for [its] admission based on the context of the ongoing trial proceedings." (ECF No. 64, Pl.'s Resp., PageID.2439.)

Defendants do not expressly discuss this Exhibit in their reply brief.

The Court concludes that Harwood has waived her challenge to the exclusion of proposed Exhibit 113. *See Sault St. Marie Tribe of Chippewa Indians*, 146 F.3d at 374 (failure to address an issue constitutes a waiver or abandonment of the argument); *see also Clemente*, 679 F.3d at 497 (issues raised in a perfunctory manner are deemed waived). She does not dispute that the March 2016 email chain with Gary Jewkes is hearsay, or explain how this proposed exhibit is relevant. "When a

party responds to a motion to exclude evidence, the party must not only make an offer of proof to preserve the issue for appeal, but must also indicate why the evidence is admissible." *See Barner*, 399 F.3d at 749 (citing Fed. R. Evid. 103(a) (providing that an appeal based on the exclusion of evidence cannot be preserved unless "the substance of the evidence was made known to the [lower] court by offer or was apparent from the context within which questions were asked"); *Angel*, 775 F.2d at 146 ("To preserve error in a ruling on evidence[,] a party must notify the trial court of his position and the specific rule of evidence on which he relies.") (quotation marks omitted)).

The Court finds that Harwood's proposed Exhibit 113, Harwood's email with Franklin Covey consultant Gary Jewkes, is excluded because it contains inadmissible hearsay, is irrelevant to the issues in this case, and Harwood waived her challenge to the exclusion of this exhibit. To the extent Harwood seeks to introduce limited portions of this email chain on some other basis, the Court will determine the admissibility of the limited portions of the proposed exhibit if and when those issues are raised at trial. Harwood is not permitted to introduce her own statements in the emails under Rule 106 in an attempt to bolster her testimony.

## IV.  CONCLUSION

For the reasons set forth above, the Court **ORDERS** that the trial of this case shall be **BIFURCATED** into liability and damages phases. The Court **FURTHER ORDERS** that when the jury trial commences, the jury will first determine the issue of liability on Harwood's remaining employment discrimination claims. If the jury returns a verdict in favor of Harwood on any of her claims, then the second phase of the trial to determine damages will immediately commence and utilize the same jury.

The Court **FURTHER ORDERS** that Defendants' Motion in Limine Regarding Pretrial Evidentiary Disputes (ECF No. 63) is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Court **ORDERS** that:

- **Harwood's proposed Exhibit 110, dBusiness article**, is **EXCLUDED** because it is hearsay and the risk of undue prejudice outweighs any relevance of the article. Harwood will be permitted to testify at trial that she made the statement to the article's author, and that she discussed the article with others at NAB, to show engagement in protected activity, and Defendants may not dispute the existence of the article.

- **Harwood's proposed Exhibits 122, 169, 170, 172-174, 176, Harwood accusation emails** – and specifically those portions of the emails that contain Harwood's statements – are **EXCLUDED** as inadmissible hearsay.

  However, to the extent Harwood seeks to introduce as evidence against Defendants statements by Defendant Gardner or another member of the executive team within the emails, concerning matters within the scope of and during their employment with NAB, the Court will rule on the

admissibility of those limited portions of the emails, as admissions of a party-opponent, if and when those issues are raised at trial. Harwood will not be permitted to introduce her own statements in the emails under Fed. R. Evid. 106 in an attempt to bolster her testimony.

- **Harwood's proposed Exhibits 117, 171, Kellogg emails**, are **EXCLUDED** because Harwood waived her challenge to the exclusion of these Exhibits and the emails are hearsay.

  However, to the extent Harwood seeks to introduce as evidence against Defendants limited portions of those emails as admissions by a party opponent, the Court will rule on the admissibility of those limited portions of the emails, as admissions of a party-opponent, if and when those issues are raised at trial. Harwood will not be permitted to introduce her own statements in the emails under Fed. R. Evid. 106 in an attempt to bolster her testimony.

- **Harwood's proposed Exhibit 182, "Yikes" email**, is **EXCLUDED** as hearsay unless (1) Harwood can establish during the trial, at sidebar and prior to testimony regarding this email before the jury, that the email communication is related to and within the scope of outside counsel Greenberg's representation of Defendants, and thus constitutes an admission of a party opponent, and/or (2) Harwood presents evidence during the trial, at sidebar and prior to testimony regarding this email before the jury, that Greenberg made the statement in the email chain "immediately" after seeing the photo, and the statement thus qualifies under the present sense impression exception to the hearsay rule. Harwood will not be permitted to introduce her own statements in the emails under Fed. R. Evid. 106 in an attempt to bolster her testimony.

- **Harwood's proposed Exhibit 180, Harwood's handwritten interview notes**, is **EXCLUDED** because it contains inadmissible hearsay, it is irrelevant, and Harwood waived her challenge to the exclusion of this proposed Exhibit by failing to offer any basis for admission of this exhibit.

37

- **Harwood's proposed Exhibits 159-162, emails from subordinates**, are **EXCLUDED** because they contain inadmissible hearsay, are irrelevant to the issues in this case, and Harwood waived her challenge to the exclusion of these exhibits. To the extent Harwood may seek to introduce limited portions of these emails on some other, non-hearsay basis, the Court will rule on the admissibility of the limited portions of the proposed exhibits if and when those issues are raised at trial. Harwood will not be permitted to introduce her own statements in the emails under Fed. R. Evid. 106 in an attempt to bolster her testimony.

- **Harwood's proposed Exhibit 113, Jewkes email**, is **EXCLUDED** because it contains inadmissible hearsay, is irrelevant to the issues in this case, and Harwood waived her challenge to the exclusion of this exhibit. To the extent Harwood may seek to introduce limited portions of this email chain on some other, non-hearsay basis, the Court will rule on the admissibility of the limited portion of the proposed exhibit if and when those issues are raised at trial. Harwood will not be permitted to introduce her own statements in the email chain under Fed. R. Evid. 106 in an attempt to bolster her testimony.

IT IS SO ORDERED.

Dated: July 6, 2022                    s/Paul D. Borman
                                        Paul D. Borman
                                        United States District Judge